2020 IL App (1st) 190818-U

No. 1-19-0818

Order filed January 14, 2020

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| TRACEY J. ELLIS, | ) | Petition for Direct |
| | ) | Administrative Review of a |
| Petitioner-Appellant, | ) | Decision of the Illinois Human |
| | ) | Rights Commission |
| v. | ) | |
| | ) | |
| THE DEPARTMENT OF HUMAN RIGHTS, THE | ) | No. 2016 CP 0906 |
| HUMAN RIGHTS COMMISSION, and CAPITAL ONE | ) | |
| 360 CAFÉ, | ) | |
| | ) | |
| Respondents-Appellees. | ) | |

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court. Justices Lavin and Coghlan concurred in the judgment.

**ORDER**

¶ 1    *Held*: The Illinois Human Rights Commission's decision to sustain the Illinois Department of Human Rights' dismissal of petitioner's public accommodation discrimination charge was not erroneous where there was a lack of substantial evidence of unlawful discrimination and the respondent cafe offered a legitimate, non-discriminatory reason for excluding petitioner from its premises.

¶ 2    Petitioner Tracey J. Ellis (Ellis) appeals *pro se* from an order of respondent Illinois Human

Rights Commission (Commission) sustaining the dismissal by respondent Illinois Department of

Human Rights (Department) of Ellis's public accommodation discrimination charge against respondent Capital One 360 Café (Capital One or café) pursuant to the Illinois Human Rights Act (Act) (775 ILCS 5/1-101, *et seq.* (West 2014)). This is a direct appeal from the Commission's decision to this Court pursuant to § 5/8-111(B) of the Act (775 ILCS 5/8-111(B) (West 20140)) and Supreme Court Rule 335 (eff. Oct. 15, 2015). Petitioner contends the Commission erred in (1) finding she failed to establish a *prima facie* case of race and color discrimination and (2) purposely "overlooking the Public Accommodation Statute".

¶ 3     On October 29, 2015, Ellis filed a public accommodation discrimination charge with the Department alleging that Capital One denied her the full and equal enjoyment of its facilities and services due to her race, which she described as "black" (count A), and her color, which she described as "light-complexion" (count B). Ellis claimed that, on June 25, 2015, Mary Williams, a "black" employee, came into the restroom at Capital One and told Ellis she could not use the restroom for her dental hygiene. Ellis complained to "white" employee Nick Sexton about Williams's "unprofessional conduct" toward her and he told her she was no longer welcome at the cafe. Ellis maintained that similarly situated customers who were non-black and "whose color [was] different than [Ellis's]" were treated more favorably.

¶ 4     The Department assigned an investigator, who interviewed Ellis, Williams, and Sexton before preparing a report. The report noted as uncontested facts that Capital One was a banking facility with a café that serves food and beverages to bank customers and the public, Capital One was a place of public accommodation, Ellis was qualified to receive the benefit of that public accommodation, and, on June 25, 2015, she sought the use or enjoyment of that public accommodation but was asked to leave.

¶ 5    Ellis advised the investigator that she had been a customer of Capital One "over the years." On June 25, 2015, she finished coffee and food she bought at the café and went to the restroom to brush her teeth because a "medical, dental hygiene issue" required her to brush her teeth after she ate or drank anything. Capital One employee Williams, described as "black, light complexion," "harassed" her by following her into the restroom and telling her she could not use the restroom for her dental hygiene. Ellis never "had an issue" in the café prior to this incident. Ellis left the restroom to report Williams's "disrespectful" and "rude" behavior to another employee, Sexton, described as "white, medium complexion." Sexton told Ellis he would talk to a manager about the incident, and then told Ellis she had to leave the café. Ellis told the investigator that she identifies as black but is "half black and half white mix," and that non-black, dark complexion customers in the café were treated more favorably than her. Ellis stated she was the only light complexion customer in Capital One that day.

¶ 6    Williams told the investigator that, on June 25, 2015, she received a complaint from a customer about Ellis being in the restroom for a long time, muttering and swearing under her breath, which made the woman uncomfortable. Williams talked to her fellow employee, Sexton, who instructed her to investigate. When Williams entered the restroom, Ellis was brushing her teeth "with her personal items scattered all over the sink." Williams updated Sexton and was instructed to advise Ellis that the restroom was not "a residential restroom" and was not to be used for personal hygiene. Williams returned to the restroom and informed Ellis that she could not use the restroom for her own personal hygiene. Ellis told Williams she "wasn't going to listen to her," the café was a "white man's place," and she was going to "take this up with 'Nick's fat ass.' " Williams left the restroom to talk to Sexton, with Ellis "on her heels." Ellis told her "I don't have

to listen to you, you're black," "you're nobody," "I'm going to talk to Nick," "I don't listen to your kind," "this is a white man's place."

¶ 7    Sexton told the investigator that, when Williams informed him of a customer complaint that someone was in the restroom for a "really long time" and that the person was "muttering and swearing under her breath," he instructed her to investigate. He explained the area around Capital One has a large homeless population, and Capital One's policy was to only allow paying customers to use its restrooms and to not allow its restrooms to be used for personal hygiene as the café "is not a residential facility but a place of business." Sexton noted Ellis had been in Capital One on prior occasions and had frequent outbursts, "often" yelling at customers and calling them racists, which caused customer complaints. Ellis had been spoken to in the past about her behavior.

¶ 8    When Williams, followed by Ellis, came to see him, Williams reported Ellis called her a racist. Sexton explained to Ellis Capital One's practice that only paying customers use the restroom and it was not for personal hygiene use because the café is not a residential building. Ellis told him she had a medical, dental hygiene issue and needed to brush her teeth. Sexton apologized but explained that, due to the large homeless population, Capital One's policy is not to allow the restroom to be used for personal hygiene. Ellis accused him of being a racist, called him a "fat ass," and said she was going to file a complaint with the corporate office. Sexton told Ellis she would have to leave. Sexton was unaware of a written policy regarding restroom usage, but stated it was Capital One's practice not to allow the restroom to be used for personal hygiene.

¶ 9    In rebuttal, Ellis denied swearing in the restroom or that she had her personal belongings all over the sink. She also denied having previous outbursts at Capital One and being confronted about her past behavior yelling at customers. Ellis stated she had frequented the café on multiple

occasions and never had a problem until Williams was hired. She denied that Sexton apologized to her.

¶ 10    The investigator found no evidence that Ellis was denied full and equal enjoyment of Capital One due to her race or color. She noted Ellis used Capital One's facility, it was Capital One's practice that the restroom could not be used for personal hygiene, Ellis was informed of that practice, and she was asked to leave when she used profanity against the staff. The investigator recommended a finding of lack of substantial evidence as to both counts of Ellis's charge. The Department then dismissed Ellis's charge.

¶ 11    Ellis filed a request for review of the Department's decision with the Commission, claiming that "[a]s the first american half white lighter blue skin colored english and responsible repeat Capital One 360 customer," she was envied by the "all black female" Williams. She claimed Williams lied to Sexton about a complaint from a "white female customer," who was supposedly in the restroom with Ellis, in order to "mess with [Ellis's] high standards." Ellis stated she did not see the woman in the restroom. She claimed Williams and Sexton denied her full and equal access to the facility because they resented seeing "Ellis's color shine in a very rich upscale location." Ellis demanded a settlement for the "errors that white has created, and for allowing blacks to behave in a racist way toward their offspring."

¶ 12    The Department responded that its investigation showed Ellis was permitted to use Capital One's facilities and services, as she ate there and used the restroom. Thus, she had no claim for denial of public accommodations. The Department's investigation showed Capital One only asked Ellis to leave after she used the restroom for a prohibited purpose and made rude, and inappropriate remarks. It found no "substantial evidence" to support discriminatory animus or a *prima facie* case

of public accommodation discrimination based on race or color. The Department noted Capital One had a legitimate non-discriminatory reason for asking Ellis to leave, and there was no evidence of pretext.

¶ 13    The Commission issued its final administrative decision on April 11, 2019, sustaining the Department's dismissal of the charge for lack of substantial evidence. It found that Ellis failed to establish a *prima facie* case of discrimination as she had not presented evidence of any patrons outside her protected classes who used the restroom for personal hygiene and were not asked to refrain from that activity or asked to leave. The Commission also found Capital One had articulated a "legitimate, non-discriminatory reason for its decision." It concluded Capital One took action against Ellis because she was brushing her teeth in the restroom and complained about being reprimanded, rather than because of her race and skin color, noting Ellis had been a patron of the café "for years without incident." The Commission stated Ellis had presented no evidence that the Department's dismissal was not in accordance with the Act.

¶ 14    Ellis timely filed her petition for direct review of the Commission's decision in this court on April 23, 2019. She contends she did establish a *prima facie* case of race and color discrimination, Capital One violated her public accommodation rights, and the Commission purposely overlooked the law on public accommodation.

¶ 15    As an initial matter, we observe that Ellis's *pro se* briefs fail to comply with many of the requirements of Illinois Supreme Court Rule 341, which governs the content of appellate briefs. Ill. Sup. Ct. R. 341 (eff. May 25, 2018). For example, her statement of facts does not set forth "the facts necessary to an understanding of the case" and contains argument. See Ill. Sup. Ct. R. 341(h)(6). Her argument section contains neither citations to the record nor, beyond citation to the

Act itself, citations to legal authority supporting her claims. See Ill. Sup. Ct. R. 341(h)(7). The supreme court rules are not suggestions, and we may strike a brief for failure to comply with the rules. *McCann v. Dart*, 2015 IL App (1st) 141291, ¶ 12. Nevertheless, because it is clear from Ellis's briefs that she challenges the Commission's final order and we have the benefit of the Commission's cogent brief, we will address the merits of Ellis's appeal. See *Twardowski v. Holiday Hospitality Franchising, Inc.*, 321 Ill. App. 3d 509, 511 (2011).

¶ 16     The Act provides that it is "a civil rights violation for any person on the basis of unlawful discrimination to *** [d]eny or refuse to another the full and equal enjoyment of the facilities, goods, and services of any public place of accommodation." 775 ILCS 5/5-102(A) (West 2014). "Unlawful discrimination" includes discrimination against a person because of her race or color. 775 ILCS 5/1-103(Q) (West 2014).

¶ 17     A case under the Act is commenced by an aggrieved party's written charge filed with the Department. 775 ILCS 5/7A-102(A)(1) (West 2014). The Department then investigates to determine whether there is substantial evidence that the alleged civil rights violation has been committed. 775 ILCS 5/7A-102(C)(4), (D)(2) (West 2014). "Substantial evidence is evidence which a reasonable mind accepts as sufficient to support a particular conclusion and which consists of more than a mere scintilla but may be somewhat less than a preponderance." 775 ILCS 5/7A-102(D)(2) (West 2014). If the Department finds there is no substantial evidence that the Act was violated, the charge is dismissed. 775 ILCS 5/7A-102 (D)(2), (3) (West 2014). The charging party may then commence an action in the circuit court or, as Ellis does here, file with the Commission a request for review of the dismissal. 775 ILCS 5/7A-102 (D)(3) (West 2014).

¶ 18    Upon a properly filed request for review, "the Commission may consider the Department's report, any argument and supplemental evidence timely submitted, and the results of any additional investigation conducted by the Department in response to the request." 775 ILCS 5/8-103(B) (West 2014). Judicial review of the Commission's final order is sought by the filing of a petition for review with this court. 775 ILCS 5/8-111(B)(1) (West 2014). We review the Commission's final order sustaining the dismissal of a discrimination charge for lack of substantial evidence under an abuse of discretion standard. *Young v. Ill. Human Rights Comm'n*, 2012 IL App (1st) 112204, ¶¶ 32-33. Under this standard, we reverse the Commission's decision only if it was arbitrary and capricious, *i.e.* it contravenes legislative intent, fails to consider a critical aspect of the matter, or offers an explanation so impossible it cannot be regarded as an exercise of the Commission's expertise. *Owens v. Department of Human Rights*, 403 Ill. App. 3d 899, 917 (2010).

¶ 19    We review the final order of the Commission, not the Department decision. *Zaderaka v. Illinois Human Rights Comm'n*, 131 Ill. 2d 172, 180 (1989). The Commission's findings of fact "shall be sustained unless the court determines that such findings are contrary to the manifest weight of the evidence." 775 ILCS 5/8-11(B)(2) (West 2014). We will not reweigh the evidence or substitute our judgment for that of the Commission. *Owens*, 403 Ill. App. 3d at 917.

¶ 20    The prohibition against public accommodation discrimination set forth in the Illinois Human Rights Act is similar to Title II of the Civil Rights Act of 1964 (42 U.S.C. § 2000a (2000)), which protects an individual's "full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation *** without discrimination or segregation on the ground of race, color, religion, or national origin." Illinois courts routinely seek guidance from federal cases when analyzing discrimination actions brought

under the Illinois Human Rights Act. *Zaderaka*, 131 Ill. 2d at 178-79; *People v. Lau*, 2019 IL App (2d) 180456, ¶ 38. Ellis provided no direct evidence of discrimination. Thus, she must provide indirect evidence of discrimination by satisfying the test set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Zaderaka*, 131 Ill. 2d at 178-79.

¶ 21 Under this three-part test, the complainant must show a *prima facie* case of unlawful discrimination by a preponderance of the evidence. *Zaderaka*, 131 Ill. 2d at 178-79; *Young*, 2012 IL App (1st) 112204, ¶ 34. If that is established, a rebuttable presumption arises that the respondent unlawfully discriminated against the complainant. *Young*, 2012 IL App (1st) 112204, ¶ 36. To rebut the presumption, the respondent must articulate a legitimate, nondiscriminatory reason for its actions. *Id.* If the respondent does so, the complainant is permitted an opportunity to prove that the articulated reason was not the true reason but was instead a pretext for unlawful discrimination. *Id.* The ultimate burden remains on the petitioner at all times. *Zaderaka*, 131 Ill. 2d at 179.

¶ 22 To establish a *prima facie* case for public accommodation discrimination, the complainant must show that she: (1) is a member of a protected class, (2) attempted to exercise the right to full benefits and enjoyment of a place of public accommodation, (3) was denied those benefits and enjoyment, and (4) was treated less favorably than similarly situated persons outside her protected class. *McCoy v. Homestead Studio Hotels*, 390 F. Supp. 2d 577, 583-85 (S.D. Tex. 2005).

¶ 23 We find the Commission did not abuse its discretion in finding Ellis failed to establish a *prima facie* case of discrimination based on her race or color. It is undisputed that Capital One is a place of public accommodation for purposes of the Act, Ellis was a member of a protected class with respect to her race and skin color, and she was asked to stop brushing her teeth in the Capital One restroom and then asked to leave Capital One. However, Ellis did not present any evidence

that Capital One treated similarly situated non-black or non-light-skinned persons more favorably. As the Commission pointed out, she presented no evidence that other customers outside her protected classes, *i.e.*, persons of a different race or color, were permitted to use the restroom for personal hygiene purposes or were not asked to leave after insulting Capital One employees.[1]

¶ 24    Although Ellis advised the Department investigator that "non-black, dark complexion customers in the café were treated more favorably" and she was the only "light complexion" customer in Capital One on June 25, 2015, she provided no evidence to support either assertion. Accordingly, Ellis did not meet her evidentiary burden to prove the third element of a *prima facie* claim for discrimination. See *Young*, 2012 IL App (1st) 112204, ¶ 47-48 (discrimination claim requires evidence of a similarly situated person in comparable circumstances). The Commission did not abuse its discretion in sustaining the dismissal for lack of substantial evidence on this basis.

¶ 25    Moreover, even if Ellis had established that similarly situated patrons outside her protected classes were treated more favorably, Capital One offered legitimate, non-discriminatory reasons for not allowing Ellis to conduct her personal hygiene in the restroom and for asking her to leave. It was reasonable for Williams and Sexton to ask Ellis to refrain from violating Capital One's restroom policy, put in place to deter the area homeless population from conducting their personal hygiene in the business's restroom. It was also reasonable for Sexton to ask Ellis to leave for calling him and Williams derogatory names. Capital One took action against Ellis based on her conduct, not her race or color.

---

[1] Ellis consistently denied to the Department and the Commission that there was another customer in the restroom with her, claiming Williams had lied. On appeal, she claims for the first time that there had been a white woman changing her clothes in the restroom stall while she was there and that she was "treated less" than the woman. Ellis did not make this claim to the Department or Commission. Issues not raised during an administrative proceeding will not be considered for the first time on appeal. *Illinois Bell Telephone Co. v Human Rights Comm'n*, 190 Ill. App. 3d 1036, 1044-45 (1989).

¶ 26    Although a petitioner may prove an articulated reason was actually a pretext for unlawful discrimination (*McDonnell Douglas,* 411 U.S. at 804), Ellis does not argue pretext here and has thus forfeited this argument. *BAC Home Loans Servicing, LP v. Mitchell*, 2014 IL 116311, ¶ 23 (an appellant's failure to argue a point in the opening brief results in forfeiture under Supreme Court Rule 341(h)(7)); Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018) (points not argued are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing). She has similarly forfeited her assertion, unsupported by factual or legal citation, that the Commission "overlooked" the public accommodation law. *In re Marriage of Solano*, 2019 IL App (2d) 180011, ¶ 70 ("A reviewing court is entitled to have the issues on appeal clearly defined with pertinent authority cited and a cohesive legal argument presented. Points not so developed are forfeited.); see Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018) (argument in briefs "shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on").

¶ 27    We conclude the Commission did not abuse its discretion in sustaining the Department's dismissal of the charge. Accordingly, the decision of the Commission is affirmed.

¶ 28    Affirmed.