2020 IL App (1st) 192634-U

No. 1-19-2634

Order filed December 31, 2020

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| HELENE TONIQUE WILLIAMS, | ) | Petition for Direct |
| | ) | Administrative Review of a |
| Petitioner-Appellant, | ) | Decision of the Illinois Human |
| | ) | Rights Commission |
| | ) | |
| v. | ) | Charge No. 19 CH 1277 |
| | ) | |
| | ) | |
| THE HUMAN RIGHTS COMMISSION, THE | ) | |
| DEPARTMENT OF HUMAN RIGHTS, KATHERINE | ) | |
| BOOTON WILSON, DEBORAH'S PLACE, and CITY | ) | |
| OF CHICAGO, COOK COUNTY, ILLINOIS, | ) | |
| | ) | |
| Respondents-Appellees. | ) | |

_____

JUSTICE PIERCE delivered the judgment of the court.
Presiding Justice Walker and Justice Hyman concurred in the judgment.

**ORDER**

¶ 1    *Held*: The decision of the Human Rights Commission to sustain the Department of Human Rights' dismissal of petitioner's charges is affirmed where petitioner did not present substantial evidence.

¶ 2    Petitioner Helene Tonique Williams appeals *pro se* from a final decision entered by the Human Rights Commission (Commission) sustaining the Department of Human Rights' (Department) dismissal of her charges of harassment and discrimination pursuant to the Illinois Human Rights Act (Act) (775 ILCS 5/1-101 *et seq.* (West 2018)). We affirm.

¶ 3    On February 15, 2019, petitioner filed a housing discrimination charge with the Department against respondent Deborah's Place,[1] a women's shelter. Petitioner alleged Deborah's Place discriminated against her because she is homosexual. Petitioner further alleged that Deborah's Place (1) knew of her sexual orientation, (2) removed her from its residential program because of her sexual orientation, and (3) did not act when other residents made "false accusations" because of her sexual orientation.

¶ 4    The Department investigated, interviewing Tiffany Isom, residential manager for Deborah's Place, respondent Katherine Booton Wilson, chief strategy officer for Deborah's Place, and petitioner.

¶ 5    According to the investigator's report, petitioner alleged that in January 2019, while a resident at Deborah's Place, other residents called her "pedophile" and "ex offender." After one incident, petitioner went to the bathroom to "vent," and Isom overheard and told petitioner that she had post-traumatic stress syndrome. Petitioner detailed another incident where other residents called her a "pedophile" and a "d***." Petitioner responded by listening to music on her headphones and rapping the lyrics aloud, which some residents reported to the staff as threatening. The next day, petitioner met with Isom and Camellia Lee, a case worker. Isom and Lee told

---

[1] Throughout the record on appeal, Deborah's Place is styled as "Debra's Place." In this order, we adopt the spelling used by Deborah's Place in its brief on appeal.

petitioner about the residents' complaints, and petitioner denied responsibility. Isom gave petitioner a journal and told her to record any incidents with other residents. Petitioner claimed that she wrote incidents down, but Isom "did not want to read" them. In another incident, petitioner and another resident, Latasha E., argued to the point that petitioner asked her to "come outside," though no physical altercation occurred.

¶ 6    On February 13, 2019, after another incident between petitioner and the residents, Lee told petitioner that she would be evaluated for mental health issues. Petitioner then left Deborah's Place, only returning to retrieve her belongings while accompanied by police officers. Petitioner admitted that she never told anyone at Deborah's Place that she was homosexual.

¶ 7    Isom stated that petitioner arrived at Deborah's Place on December 21, 2018. During petitioner's stay, she never complained of or reported any comments from other residents about harassment based on her sexual orientation. During her stay, petitioner threatened other residents, and Deborah's Place planned for her to be evaluated by a mental hospital. Isom further explained that Deborah's Place has a grievance policy, but petitioner never filed a grievance.

¶ 8    Isom described an incident where petitioner locked herself in the bathroom and screamed violently. Isom knocked on the door and asked if petitioner was okay, and she responded that she was just rapping violent lyrics. Isom also described another incident on February 13, 2019, where petitioner threatened other residents. Following that incident, lead case manager Borita Berry told petitioner to write down what happened, but did not tell petitioner she would be sent to a mental hospital involuntarily. Petitioner left the facility that day. The next day, petitioner arrived with the police and retrieved her belongings. Isom told the police that she believed petitioner was a danger to herself and others and Isom wanted to "petition" for petitioner to be involuntarily committed,

but the officers disagreed. Before petitioner left, Isom told her that "her bed was not being taken away from her," and Deborah's Place would hold it for seven days.

¶ 9     Booton Wilson stated that she did not know petitioner's sexual orientation, and never received any reports that other residents made comments regarding petitioner's sexual orientation.

¶ 10    The investigator also reviewed documents from Deborah's Place regarding petitioner, and found that none listed her sexual orientation. No written complaints or grievances were on file. An incident report from February 13, 2019, stated that petitioner threatened to kill other residents because they were "talking" about her, prompting Berry to begin writing a petition for petitioner to be admitted to the hospital. The incident report further indicated that petitioner then left Deborah's Place and did not return.[2]

¶ 11    On May 22, 2019, the Department issued a Determination of Lack of Substantial Evidence. The Department found that petitioner did not establish her harassment claim because it was undisputed that she never told Deborah's Place of her sexual orientation, reported any incidents of harassment to Deborah's Place, or filed a grievance. Based on these facts, the Department concluded that petitioner did not show substantial evidence that Deborah's Place subjected her to a hostile environment due to her sexual orientation, or had any knowledge of harassment on which it failed to take appropriate action. Regarding petitioner's discrimination claim, the Department found that it was "uncontested" that petitioner left Deborah's Place "on her own," and thus petitioner failed to provide substantial evidence that Deborah's Place discriminated based on her sexual orientation.

_____

[2] The records reviewed by the investigator are not included in the record on appeal.

¶ 12    On July 11, 2019, petitioner filed a request for review with the Commission, arguing that Deborah's Place responded to the Department's investigation dishonestly.

¶ 13    On August 19, 2019, the Department responded to petitioner's request for review. It argued that petitioner did not report any alleged harassment to Deborah's Place, and Deborah's Place denied that its staff harassed her. Regarding the discrimination claim, the Department argued that petitioner left voluntarily, never informed Deborah's Place of her sexual orientation, and had threatened other residents.

¶ 14    On November 26, 2019, the Commission sustained the Department's dismissal. The Commission found petitioner's harassment claim failed because she could not show Deborah's Place knew of harassment and failed to respond. It further found that petitioner's claim based on discriminatory animus in removing her from Deborah's Place failed where (1) she could not establish a *prima facie* case because the facts showed Deborah's Place did not know of petitioner's sexual orientation, and (2) even if she could establish a *prima facie* case, Deborah's Place had a legitimate, non-discriminatory reason for its actions, specifically that petitioner threatened other residents and exhibited behavior warranting consideration of involuntary commitment.

¶ 15    On December 4, 2019, petitioner filed a petition for direct administrative review with this court.

¶ 16    On appeal, petitioner contends that the Commission erred by sustaining the Department's dismissal of her claim, and further claims that Deborah's Place ignored a grievance she filed, engaged in human trafficking, discriminated against her because she was a female law enforcement officer, and denied her rights under the fourth and eighth amendments to the United States Constitution.

¶ 17    As a threshold matter, Deborah's Place and Booton Wilson argue, and we agree, that petitioner did not name respondent Booton Wilson in her charge filed with the Department, and thus Booton Wilson is an improper respondent here and must be dismissed. See Ill. S. Ct. R. (335)(a) (eff. July 1, 2017) ("The agency and all other parties of record shall be named respondents.").

¶ 18    We next note that petitioner's brief is deficient because it does not comply with the requirements of Illinois Supreme Court Rule 341(h) (eff. Oct. 1, 2020). The fact section of her brief does not contain citations to the record on appeal, in violation of Rule 341(h)(6) (eff. Oct. 1, 2020). Additionally, petitioner's argument section lacks citations to authority, and she does not provide the standard of review. See Ill. S. Ct. R. 341(h)(3), (7) (eff. Oct. 1, 2020). Petitioner's *pro se* status does not excuse her requirement as an appellant to abide by Rule 341. *Wing v. Chicago Transit Authority*, 2016 IL App (1st) 153517, ¶ 7. This court has the authority to dismiss petitioner's appeal based on these deficiencies alone. *Oruta v. B.E.W. & Continental*, 2016 IL App (1st) 152735, ¶ 30. We will consider the merits of her appeal, however, because her general claim challenging the Commission's decision is discernible from her brief, and we have the benefit of cogent appellees' briefs filed by the Commission, and Deborah's Place and Booton Wilson. See *Twardoswki v. Holiday Hospitality Franchising, Inc.*, 321 Ill. App. 3d 509, 511 (2001).

¶ 19    Petitioner brought harassment and discrimination charges under section 3-102(B) of the Act. 775 ILCS 5/3-102 (West 2018). When a petitioner makes a charge pursuant to the Act, the Department investigates to determine whether the claim is supported by "substantial evidence." 775 ILCS 5/7A-101, 7A-102(A)-(D) (West 2018). Substantial evidence is evidence that a reasonable person would accept as sufficient to support a specific conclusion, and must be more

than a "mere scintilla." 775 ILCS 5/7A-102(D)(2) (West 2018). The Department will dismiss the charge if the petitioner does not provide substantial evidence. The petitioner can appeal from this dismissal to the Commission, and then may appeal a final order of the Commission sustaining dismissal to the appellate court. 775 ILCS 5/7A-102(D)(3), (G)(3) (West 2018). The appellate court reviews the Commission's decision for abuse of discretion, and will not reverse a decision unless it is arbitrary or capricious. *Young v. Illinois Human Rights Commission*, 2012 IL App (1st) 112204, ¶¶ 32-33.

¶ 20    Regarding petitioner's harassment claim, the Act prohibits a party from altering the "terms, conditions or privileges" of the "furnishing of facilities or services" on the basis of sexual orientation. 775 ILCS 5/3-102(B) (West 2018). Illinois courts have analogized claims under the Act to claims under the federal fair housing laws, which can be established through evidence that (1) "[a claimant] endured unwelcome harassment based on a protected characteristic"; (2) such harassment was "severe or pervasive enough" that it interfered with "the terms, conditions, or privileges of her residency, or in the provision of services or facilities"; and (3) liability could be imputed to the defendant. See *Wetzel v. Glen St. Andrew Living Community, LLC*, 901 F.3d 856, 861-62 (7th Cir. 2018); *Szkoda v. Illinois Human Rights Commission*, 302 Ill. App. 3d 532, 539-40 (1998).

¶ 21    Here, the record show that the Department and the Commission both accepted petitioner's representation that she belonged to a protected class due to her sexual orientation, but also found that petitioner never informed Deborah's Place of her sexual orientation. Petitioner herself admitted this to the Department investigator, and according to the investigator, Deborah's Place's records also supported this conclusion. There is also no indication in the record that petitioner told

Deborah's Place's staff of harassment from other residents based on her sexual orientation, or put any such complaint in writing.

¶ 22　Based on our review of the record, we find that the Commission did not abuse its discretion in sustaining the Department's decision that petitioner did not establish harassment. There is no dispute that petitioner never informed anyone at Deborah's Place of her sexual orientation, and there is also no dispute in the factual record available to the Commission that petitioner never informed anyone at Deborah's Place that other residents were harassing her based on her sexual orientation. Thus, even accepting petitioner's allegations regarding the harassment from other residents, there is no basis to impute liability to Deborah's Place. We note that petitioner claims on appeal that she filed a grievance that Deborah's Place did not acknowledge, but because she did not make that allegation in her charge or during the Department's investigation, it was not considered by the administrative agency, and we cannot consider it on appeal. See *Carpetland U.S.A., Inc. v. Illinois Department of Employment Security*, 201 Ill. 2d 351, 396-97 (2002).

¶ 23　Moving to petitioner's discrimination claim, under the Act, a petitioner alleging housing discrimination must show that the respondent altered the "terms, conditions or privileges" of her housing by discriminating against her based on membership in a protected class. 775 ILCS 5/3-102(B) (West 2018). To establish discrimination in this context, a claimant must present substantial evidence to establish a *prima facie* case that (1) the complainant belongs to a minority, (2) the respondent knew of this fact, (3) the complainant was ready and able to accept the respondent's services, and (4) respondent refused to deal with the claimant. *Hsu v. Human Rights Comm'n*, 180 Ill. App. 3d 949, 953 (1989). If the claimant establishes a *prima facie* case,

respondent may rebut by demonstrating that it had a legitimate, non-discriminatory reason for its action. *Id.* at 954.

¶ 24 Here, the Commission affirmed the Department's finding because petitioner never informed Deborah's Place of her sexual orientation, and thus Deborah's Place could not have acted with any discriminatory animus. Additionally, the Commission found that Deborah's Place had a legitimate, non-discriminatory reason for its actions, specifically that petitioner threatened other residents.

¶ 25 Again, the record shows that petitioner never informed Deborah's Place of her sexual orientation. Additionally, Isom stated that petitioner left Deborah's Place on her own accord after staff members suggested she be evaluated for involuntary commitment at a mental hospital. Petitioner and Deborah's Place disputed whether petitioner threatened other residents, which the Department and Commission apparently resolved in Deborah's Place's favor. Finally, the record shows that Isom told petitioner after she left that Deborah's Place would keep her bed open for seven days.

¶ 26 On this record, we find that the Commission did not abuse its discretion in sustaining the Department's dismissal of petitioner's discrimination claim. First, we agree that petitioner cannot establish a *prima facie* case because there was no evidence that Deborah's Place knew of petitioner's membership in a protected class. *Hsu*, 180 Ill. App. 3d at 953. Additionally, even if we assume that petitioner established a *prima facie* case based on Deborah's Place's staff's suggestion that petitioner be evaluated for involuntary commitment, we also agree with the Commission that Deborah's Place had a legitimate, non-discriminatory reason for its actions. The Commission could reasonably weigh the evidence presented by Deborah's Place over that of

petitioner, as the Department did, to conclude that petitioner had threatened other residents and behaved in a manner that warranted consideration of involuntary commitment.

¶ 27 Finally, we note that petitioner's claims of human trafficking, discrimination because she was a female law enforcement officer, and fourth and eighth amendment violations cannot be considered here, as these claims were not raised before the Department and Commission. See *Carpetland*, 201 Ill. 2d at 396-97.

¶ 28 For the above reasons, the Commission's decision is affirmed.

¶ 29 Affirmed.