2024 IL App (1st) 230128-U

No. 1-23-0128

Order filed October 22, 2024

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | |
|---|---|
| JERICO MATIAS CRUZ, | ) Petition for Direct |
| | ) Administrative Review of a |
| Petitioner-Appellant, | ) Decision of the Human Rights |
| | ) Commission. |
| v. | ) |
| | ) Charge No. 2021 CP 2417 |
| THE ILLINOIS HUMAN RIGHTS COMMISSION, | ) |
| ILLINOIS DEPARTMENT OF HUMAN RIGHTS, and | ) |
| ILLINOIS SECRETARY OF STATE, | ) |
| | ) |
| Respondents-Appellees. | ) |

JUSTICE ELLIS delivered the judgment of the court.
Justices McBride and Howse concurred in the judgment.

**ORDER**

¶ 1    *Held*: Affirmed. Illinois Human Rights Commission did not abuse its discretion in upholding determination of lack of substantial evidence of discrimination.

¶ 2    Petitioner, Jerico Matias Cruz, filed a charge of discrimination with the Illinois Department of Human Rights (IDHR) pursuant to the Illinois Human Rights Act (Act) (775 ILCS 5/1-101 *et seq.* (West 2020)). The charge alleged the Illinois Secretary of State (Secretary) discriminated

against him based on race, sex, ancestry, national origin, military status, and citizenship status. The IDHR dismissed the charge for lack of substantial evidence. Cruz requested a review with the Illinois Human Rights Commission (Commission), which sustained the finding. Cruz filed a direct appeal with this Court. We affirm.

¶ 3    On March 22, 2021, Cruz filed a charge with the IDHR, alleging he was discriminated against by the Secretary's Department of Motor Vehicles (DMV), where he was denied full and equal enjoyment of the DMV's facility based on his race (Asian), sex (male), ancestry (Filipino), national origin (Philippines), military status (U.S. armed forces veteran), and citizenship status (U.S. citizen). For all these claims, he alleged that, on March 22, 2021, the DMV facility's manager told him he "should leave and come back next time," even though Cruz's driver's license was expiring soon. He claimed that persons who were "non-Asian," female, "non-Filipino," "non-Philippines," "non-veterans," and "non-US citizens" were treated differently under similar circumstances.

¶ 4    The IDHR investigated Cruz's charge and prepared a report dated May 6, 2022. As part of its investigation, the IDHR's investigator interviewed Cruz and Jeanine Stroger, Deputy Director and Equal Employment Opportunity Officer for the Secretary. The investigator recounted as uncontested facts that the DMV was a place of public accommodation under the Act that provided driver's license services to Illinois state citizens. It was also uncontested that Cruz was Asian, male, Filipino, originated from the Philippines, a U.S. armed forces veteran, and a U.S. citizen. It was further uncontested that, on March 22, 2021, Cruz visited a DMV facility to renew his driver's license and obtain a REAL ID-DL, and he was issued a temporary REAL ID-DL that same date.

¶ 5     During the interview, Cruz stated that on March 22, 2021, he visited the Secretary's DMV facility with the required documentation to renew his driver's license and obtain the REAL ID-DL. The male, "non-Asian" employee outside the facility looked at Cruz's passport, driver's license, and address verification documents. He granted Cruz entry into the facility because Cruz met the requirements for the REAL ID-DL and driver's license renewal. Once inside, however, other employees told Cruz he did not have the proper documentation. The employees told Cruz to "go home and come back another time with the correct information" after he had already stood in line and been granted entrance. Cruz asked to speak to the manager and was told to go to the line again and ask for a supervisor. Cruz refused, so the employees contacted a manager.

¶ 6     Cruz told the IDHR's investigator that the manager, Lorenzo Morales, looked through Cruz's papers and stated "he should leave and go back with the proper documentation" to get his REAL ID-DL. After a "long back and forth type of argument," Morales asked for Cruz's certificate of naturalization and told Cruz to go back in line. Cruz refused to do so because the Secretary's DMV staff failed to ask for his certificate earlier. Eventually, Morales decided Cruz had "all the documents." The facility processed his REAL ID-DL and provided him with a copy. Cruz received the original two weeks later in the mail.

¶ 7     Cruz asserted that he had previously renewed his driver's license many times and never experienced this "impolite treatment." He claimed to have a copy of the DMV's video surveillance showing that his conversation with Morales lasted about an hour. (This video evidence is not included in the record on appeal.) Cruz reported he "cannot make a justification regarding similarly situated [individuals] being treated better that were not male, Asian, Filipino, from the Philippines,

a veteran, or *** not a U.S. citizen" because he "did not know who had proper documentation." Nonetheless, he asserted that "others in front of him did not experience what he did."

¶ 8    Stroger told the investigator that Cruz entered the Secretary's DMV facility on March 22, 2021, but was not denied full and equal enjoyment of the facility. Cruz was helped by three employees, one of whom was Asian and one of whom was male, and they knew Cruz was a veteran because he provided military documents. Cruz wanted his middle name on his REAL ID-DL, but the documents shown to the employees did not include a middle name. The employees explained that to Cruz and gave him the option to renew his regular driver's license with the documents presented, or to come back another day to receive the REAL ID-DL. Morales intervened and attempted to "diffuse the situation" because Cruz was upset. Cruz was taken to a "supervisor area" to look through his documents. While doing so, he found naturalization paperwork that included his middle name. Cruz received a temporary REAL ID-DL driver's license the same day and later received his physical card in the mail. Stroger stated that the entire process took 35 to 45 minutes, since obtaining a REAL ID-DL is a longer process.

¶ 9    Stroger provided a checklist of documents required to receive a REAL ID-DL. Stroger stated the rules are "strict" on what documents an applicant must provide to obtain a REAL ID-DL, and the Secretary did not have authority to deviate from homeland security rules regarding the required documentation. Because Cruz was a first-time applicant, different documents were required than for a normal driver's license.

¶ 10    In rebuttal, Cruz conceded that he received a temporary REAL ID-DL the day he visited the facility and received the original a few weeks later.

¶ 11    The IDHR's investigator recommended a finding of lack of substantial evidence on all counts. Specifically, the investigator determined that requiring applicants to comply with a checklist of documents to receive a federal REAL ID-DL did not constitute a violation of the Act. The investigator also found that the evidence showed Cruz was "merely dissatisfied with federal requirements to obtain a REAL ID-DL." Cruz was unable to provide any proof that the Secretary had a discriminatory motive for its treatment of him. Additionally, there was no evidence of a nexus between the alleged incidents and Cruz's race, sex, ancestry, national origin, military status, or citizen status. Nor could Cruz identify any individual, not in his protected classes, who was treated better under similar circumstances. The investigator concluded that Cruz failed to establish a *prima facie* case of unlawful discrimination based on race, sex, ancestry, national origin, military status, or citizenship status.

¶ 12    The IDHR accepted the investigator's recommendations and dismissed Cruz's charge for lack of substantial evidence.

¶ 13    Cruz filed a request for review with the Commission. He argued that he provided all necessary documents prior to entering the Secretary's DMV facility, and the DMV and its employees "violated the public accommodation of the [Act] [with] their actions and behaviors."

¶ 14    As an exhibit, Cruz attached a completed complainant questionnaire apparently sent to the IDHR's investigator via email. In the questionnaire, Cruz stated he received his REAL ID-DL but wanted to "continue [his] public accommodation complaint" against the DMV employees' "public humiliation, harassment, unprofessionalism, and poor customer service skills." Also attached as an exhibit were emails about "CCTV Footages," an online complaint form on the website of the Office of Executive Inspector General, and a FOIA request to the Secretary.

¶ 15    The IDHR filed a response to Cruz's request for review, reiterating its findings that its investigation did not reveal substantial evidence supporting Cruz's charge. The IDHR noted that Cruz failed to provide any additional evidence warranting a reversal of its original determination.

¶ 16    On December 27, 2022, the Commission entered a final order sustaining the IDHR's dismissal for lack of substantial evidence. In upholding the dismissal, the Commission found that Cruz was not denied service, and there was insufficient evidence that he received any particular treatment due to his protected class. The Commission also noted that citizenship status was not a protected class in public accommodations under the Act, as it was only protected in the context of employment.

¶ 17    Pursuant to section 8-111(B)(1) of the Act, Cruz timely filed a *pro se* petition for administrative review in this court. See 775 ILCS 5/8–111(B)(1) (West 2022).

¶ 18    On appeal, Cruz seeks reversal of the Commission's decision sustaining the dismissal of his charge. We review the Commission's decision for an abuse of discretion. *Young v. Illinois Human Rights Comm'n*, 2012 IL App (1st) 112204, ¶ 32. Under the abuse of discretion standard, we will not reverse the Commission's decision unless it is arbitrary or capricious, meaning "it contravenes legislative intent, fails to consider a critical aspect of the matter, or offer[s] an explanation so implausible that it cannot be regarded as the result of an exercise of the agency's expertise." *Id.* ¶ 33. We will not reweigh the evidence or substitute our judgment for that of the Commission. *Id.*

¶ 19    As a preliminary matter, we agree with the Commission that Cruz arguably forfeited a review of the Commission's decision on the merits. Specifically, Illinois Supreme Court Rule 341(h)(7) requires a brief to "contain the contentions of the appellant and the reasons therefor,

with citation of the authorities and the pages of the record relied on." Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). The rule further provides that "[p]oints not argued are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing." Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020).

¶ 20    Here, Cruz argues that the Commission failed to "properly review" the exhibits attached to his request for review, "procedurally follow and review" his request for review as provided for under the Act and the administrative code, and "properly review the *prima facie* evidence and material facts" set forth in his complaint and request for review. But he does not develop any cognizable argument, supported by relevant authority, addressing the basis for the dismissal of his charge: his failure to set forth a *prima facie* case of discrimination because he received the service requested from the Secretary's DMV facility. But we will consider the merits of his appeal regardless, as the issues are not complex, and we have the benefit of the Commission's brief. See *Twardowski v. Holiday Hospitality Franchising, Inc.*, 321 Ill. App. 3d 509, 511 (2001) (finding meaningful review was not precluded, as merits of appeal could be ascertained from record).

¶ 21    Under the Act, the IDHR investigates and may dismiss a charge of discrimination upon a determination that there is no "substantial evidence" supporting the charge. 775 ILCS 5/7A-102(C), (D)(3) (West 2020). The Act defines "substantial evidence" as "evidence which a reasonable mind accepts as sufficient to support a particular conclusion and which consists of more than a mere scintilla but may be somewhat less than a preponderance" of proof. *Id*. § 7A-102(D)(2). "[M]ere speculation and conjecture does not constitute substantial evidence." *Folbert v. Department of Human Rights*, 303 Ill. App. 3d 13, 25 (1999).

¶ 22 A complainant may seek review of the IDHR's dismissal of the charge by filing a request for review with the Commission. 775 ILCS 5/7A-102(D)(3) (West 2020). During its review, the Commission "may consider the [IDHR's] report, any argument and supplemental evidence timely submitted, and the results of any additional investigation conducted by the [IDHR] in response to the request." *Id*. § 8-103(B). When the Commission sustains the dismissal, the complainant may, as here, seek direct appellate review of the Commission's final determination. *Id*. § 8-111(B)(1).

¶ 23 A complainant may prove discrimination by presenting direct evidence of discrimination, such as proof of a racial slur or a written or oral admission, or through indirect evidence. *Board of Education of City of Chicago v. Cady*, 369 Ill. App. 3d 486, 495 (2006); *Lalvani v. Illinois Human Rights Comm'n*, 324 Ill. App. 3d 774, 790 (2001). Here, there was no direct evidence of discrimination, so Cruz was required to establish unlawful discrimination through indirect evidence. To show indirect evidence of discrimination, the complainant bears the initial burden of establishing a *prima facie* case of unlawful discrimination by a preponderance of the evidence. *Young*, 2012 IL App (1st) 112204, ¶ 34.

¶ 24 Cruz asserted discrimination premised on the denial of full and equal enjoyment of the Secretary's DMV facility. Section 5-102(A) of the Act provides it is a civil rights violation for any person on the basis of unlawful discrimination to "[d]eny or refuse to another the full and equal enjoyment of the facilities, goods, and services of any public place of accommodation." 775 ILCS 5/5-102(A) (West 2020). The IDHR found that the Secretary's DMV facility was a place of public accommodation.

¶ 25 The Act defines "unlawful discrimination," in relevant part, as discrimination against a person due to actual or perceived race, sex, ancestry, national origin, or military status. *Id*. § 1-

103(Q). To establish a *prima facie* case of discrimination in public accommodation, a petitioner must show that (1) "he is a member of a protected class"; (2) "he attempted to exercise the right to full benefits and enjoyment of a place of public accommodation"; (3) "he was denied those benefits and enjoyment"; and (4) "he was treated less favorably than similarly situated persons outside his protected class." (Internal quotation marks omitted.) *Dunn v. Human Rights Comm'n*, 2022 IL App (1st) 211155-U, ¶ 34.

¶ 26     We conclude the Commission did not abuse its discretion in finding that Cruz failed to establish a *prima facie* case of unlawful discrimination on the basis of his race, sex, ancestry, national origin, military status, or citizenship status. During the IDHR's investigation, Cruz conceded that he ultimately received the service that he requested at the DMV facility, as he received a temporary REAL ID-DL on that date and later received his official REAL ID-DL. On that basis alone, Cruz did not establish a *prima facie* case of discrimination.

¶ 27     As the Commission noted, Cruz additionally failed to establish a *prima facie* case because he did not identify a single person of a non-protected class who received more favorable treatment than he did under similar circumstances. *Id.* We thus find that the Commission's final order sustaining the IDHR's dismissal of his charge for lack of substantial evidence was not an abuse of discretion.

¶ 28     Cruz claims the Commission failed to properly review the exhibits attached to his request for review and the "*prima facie* evidence and material facts," and it likewise failed to follow the "administrative procedure" of the Act and administrative code. But these vague and undeveloped allegations are insufficient to overcome the Commission's finding that the IDHR's investigation revealed no "substantial evidence" supporting his charge. *Folbert*, 303 Ill. App. 3d at 25.

¶ 29    For all these reasons, the Commission did not abuse its discretion in upholding the IDHR's dismissal for lack of substantial evidence.

¶ 30    The final decision of the Commission is affirmed.

¶ 31    Affirmed.