2021 IL App (1st) 200772-U

No. 1-20-0772

Order filed March 2, 2021.

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| MARVIN O'NEAL, | ) | Petition for Direct |
| | ) | Administrative Review of a |
| Petitioner-Appellant, | ) | Decision of the Illinois Human |
| | ) | Rights Commission. |
| v. | ) | |
| | ) | |
| THE ILLINOIS HUMAN RIGHTS COMMISSION; | ) | Charge No. 2019 CF 0016 |
| THE ILLINOIS DEPARTMENT OF HUMAN RIGHTS; | ) | |
| and DISTRICT 132 CALUMET PARK, | ) | |
| | ) | |
| Respondents-Appellees. | ) | |

_____

JUSTICE LAVIN delivered the judgment of the court.
Justices Pucinski and Cobbs concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The decision of the Illinois Human Rights Commission sustaining the Illinois Department of Human Rights' dismissal of petitioner's charge of discrimination and retaliation based on a lack of substantial evidence is affirmed.

¶ 2    Petitioner Marvin O'Neal appeals *pro se* from a final decision of the Illinois Human Rights

Commission (Commission) sustaining the Illinois Department of Human Rights' (Department)

dismissal of his charge of discrimination and retaliation for lack of substantial evidence. For the reasons that follow, we affirm.

¶ 3    On July 9, 2018, petitioner filed a *pro se* charge of discrimination and retaliation with the Department. In the charge, petitioner alleged that School District 132 Calumet Park (District 132) discriminated against him by discharging him from employment on March 21, 2018, due to his "skin color, light complexioned" (Count A), due to his "race, black" (Count B), and in retaliation for having complained about unlawful discrimination in the workplace (Count C).[1] Petitioner alleged that similarly-situated "dark skinned" and "non-black" employees were not discharged under similar circumstances. He further alleged that his discharge occurred two months after he had complained to the principal and the dean of students that he felt District 132 was discriminating against him because of the color of his skin.

¶ 4    The Department investigated the charge. According to the investigator's report, petitioner stated that he was hired by District 132 as a substitute teacher in March 2006 and later became a paraprofessional. In December 2017, his daughter, who attended one of the schools in District 132, reported she was not able to participate in her gym class. Petitioner emailed Nicole Orseno, a gym teacher at the school, inquiring about the situation. Three days later, Orseno responded that petitioner should talk with a different gym teacher, Cody Anderson. Anderson emailed petitioner "later" and explained why petitioner's daughter was told to sit out of class. Petitioner was never able to meet with either gym teacher.

---

[1]In the charge, petitioner stated that he was discharged on March 2, 2018. However, this appears to be a typographical error, as the evidence reflects he was discharged on March 21, 2018.

¶ 5    Petitioner stated that on January 9, 2018, he and his mother met with the school principal, Dalyn Drown, and the dean of students, Dale Rowlett. Petitioner requested that Orseno be present, but Drown told him, "I will not put her in front of you." Petitioner stated that Drown was "trying to save his own skin," and Drown responded that the incident was out of his hands and petitioner would need to speak with the school board. Petitioner told Drown that "this" was happening because he was being stereotyped as a black man that is a drug dealer and gang member. Petitioner told the investigator that nothing came out of the meeting.

¶ 6    Petitioner stated that in March 2018, he accepted a substitute teaching job with District 132 for a Tuesday the following week. On the Friday before he was to work, he went to the school to get his ID. There, he saw a Spanish teacher, Meghan Crocello. Petitioner asked Crocello about the schedule and whether anything had changed at the school. Crocello told petitioner that she would help him out. Later, Crocello called and told petitioner "that his name was taken off the list." Petitioner believed that Orseno had told Crocello "something about him."

¶ 7    Petitioner told the investigator that between January and March of 2018, he was never told he could not work for District 132. In March 2018, he received an email from Nancy Munoz, Human Resources Director for District 132, indicating that he was removed from the list of substitute teachers because he was unprofessional in his emails with Orseno. That same month, petitioner had a meeting with Elizabeth Reynolds, Superintendent, to find out why he was taken off the list. Reynolds told him the reason was "inappropriate communication." On March 25, 2019, petitioner received a certified letter that included a no trespass notice and indicated criminal charges could be taken against him.

¶ 8    Petitioner stated that he believed he was discharged because of his skin color and race, since District 132 "looked at him as a threat." Petitioner told the investigator he had no comparatives. He stated he was discharged because Orseno falsely accused him of threatening her. He believed District 132 was protecting Orseno because the district had high turnover and trouble keeping gym teachers.

¶ 9    Queen O'Neal, petitioner's mother, told the investigator that at the January 9, 2018, meeting, she asked why Orseno was "attacking her granddaughter by saying she has a behavior issue." She and petitioner also asked why Orseno was not at the meeting. Drown answered that teachers do not have to go to meetings. O'Neal stated that when petitioner received notice that he was being dismissed for inappropriate behavior, she requested an appointment with Reynolds. Again, Orseno was not at the meeting.

¶ 10    Nancy Munoz, Human Resources Director for District 132, told the investigator that petitioner was hired as a substitute teacher in 2006. He later became a paraprofessional. He resigned from that role in 2016, but remained a substitute teacher. Petitioner received the District 132 handbook on policies and procedures when he was hired, had received satisfactory performance evaluations as a paraprofessional from the principal, and had only had discipline for attendance. In the year before his termination, petitioner had accepted a total of five assignments. According to Munoz, petitioner had been offered hundreds of other assignments, but did not accept them.

¶ 11    Munoz stated that on March 1, 2018, Orseno went to the principal's office at Burr Oak School distraught and upset because petitioner had accepted a substitute position at that building. Orseno gave Munoz copies of correspondence and described interactions between herself and

petitioner that began shortly after August 22, 2017, when petitioner accepted his first assignment of the school year. On August 23, 2017, petitioner emailed Orseno, stating that he was a substitute teacher and parent. He wrote that he saw her in the gym and requested to talk to her about how his daughter is in real life. Orseno emailed a response to petitioner the same day, stating that Anderson would be his daughter's gym teacher that year and she looked forward to meeting him in the future.

¶ 12    On August 24, 2017, petitioner and Orseno saw each other in the parking lot. Petitioner allegedly made inappropriate comments toward Orseno that made her feel uncomfortable. On August 25, 2017, petitioner sent Orseno an email saying he was very glad to have met her and that she seemed "very nice, fun, and outgoing." He wrote that he was "definitely worth it and extremely rare." Orseno felt uncomfortable with the implications and did not respond. On December 4, 2017, petitioner sent Orseno an email asking about gym class and requesting Anderson's email address. Later that same day, petitioner sent Orseno another email, saying "never mind," he had found Anderson's address. Orseno did not respond because Anderson had spoken to petitioner. On December 8, 2017, petitioner sent Orseno an email observing that she had not responded to him. He stated her lack of response was very disappointing and wrote, "[N]ext time I'll go thru your boss." That same day, Orseno sent petitioner a response. She stated that due to the nature of his emails, it would be best if he only addressed Anderson with concerns. On December 11, 2017, petitioner emailed Orseno. He said it had taken her three days to reply that she did not want the responsibility; that he will address any teacher who is teaching his daughter or in the vicinity; that she is not exempt from being asked about the class because it is his right as a parent; that his daughter did not participate in class because of guilt by association and he wanted to know why;

and that she should tell her boss about the email. On December 11, 2017, Orseno forwarded the emails to Rowlett, the dean of students.

¶ 13    Munoz told the investigator that the expectation is to respond to emails within two days. She did not know if Orseno was petitioner's daughter's teacher. Orseno felt uncomfortable with petitioner. After the email on December 11, 2017, the dean of students, Rowlett, called petitioner and told him he should only speak to Anderson. According to Munoz, petitioner did not contact Orseno again after Rowlett talked to him.

¶ 14    Orseno reported to Munoz that on December 20, 2017, she felt petitioner purposely parked close to her car in the school parking lot and then followed her all the way around the school and "stopped when she stopped." Munoz told the investigator that on January 9, 2018, petitioner had a meeting with Drown and Rowlett. At the meeting, petitioner claimed he was being defamed by Orseno. Petitioner was told his actions made Orseno uncomfortable, but he did not accept that he did anything wrong. Petitioner indicated he would not contact Orseno any further.

¶ 15    On January 31, 2018, Orseno reported to Munoz that petitioner told her he would be seeing her when he decided to sub, and she felt that was a threat. On March 1, 2018, Orseno reported to the principal, Drown, that she felt uncomfortable with petitioner being a substitute on March 6, 2018. Drown asked Orseno to report her concerns to human resources. He also requested that Munoz contact Orseno directly to discuss possible harassment. On March 1, 2018, Orseno went to Munoz, upset because she found out petitioner was going to be subbing at the school where she worked. Orseno felt that petitioner was trying to intimidate her. The Spanish teacher, Crocello, told Munoz that petitioner had approached her and asked why Orseno was saying petitioner wanted

"to put a ring on it." Crocello told Munoz this made her uncomfortable. Crocello also reported that petitioner yelled down the hallway, "It's a falsity."

¶ 16    Munoz told the investigator that she looked at the information provided by Orseno and then contacted petitioner. She told him everything would have to be investigated and that he could not be assigned to the same building as Orseno during the investigation, although he could work as a substitute teacher at another location. Munoz explained the details of Orseno's claims to petitioner and gave him an opportunity to respond. According to Munoz, petitioner denied everything and "said that it was a falsity." When Munoz finished the investigation, she determined petitioner's behavior was creating a hostile work environment that did not feel safe and made Orseno and Crocello uncomfortable. Munoz further stated that Anderson felt petitioner was trying to get information from him about Orseno.

¶ 17    Munoz provided the investigator with a March 15, 2018, investigative report prepared by District 132. In the report, District 132 determined that petitioner sent inappropriate and unprofessional emails to Orseno, made comments to her about her appearance, told her he did not see a ring on her finger, and said she should take a chance on him, all of which made Orseno uncomfortable. District 132 found that in December 2017, petitioner sent Orseno an aggressive email as if he was trying to intimidate her, reported that she was defaming him, parked next to her car and stared at her, and followed her all the way around the school. District 132 found that the principal explained to petitioner that his actions made Orseno uncomfortable and intimidated her, but petitioner did not accept the explanation. District 132 further found that on March 2, 2018, petitioner asked Crocello why Orseno was saying he told her he wanted to put a ring on her and then yelled "it is a falsity" down the hallway. District 132 concluded that petitioner did not

acknowledge that his actions created intimidation and discomfort for Orseno, and recommended that petitioner be removed as a substitute teacher due to his inappropriate communications with staff and his inability to conduct himself professionally.

¶ 18    On March 21, 2018, Munoz sent petitioner a letter indicating that he would no longer be on District 132's substitute teacher list due to his inappropriate communications with staff and inability to conduct himself professionally.

¶ 19    Munoz told the investigator that after being discharged, petitioner attended school board meetings. At one, he requested time to talk. His behavior became aggressive and inappropriate at the meeting. Following this meeting, District 132 obtained an order of protection against petitioner.

¶ 20    Munoz provided the investigator with District 132's workplace harassment policy, which stated that employees were expected to maintain a productive and respectful work environment that was free of unlawful discrimination and harassment. The policy indicated that harassment included verbal, physical, or other communications on the basis of sex. District 132 also provided demographic information for its employees. In 2018, District 132 reported that it employed 153 teachers, 84 of whom (54%) identified as black. Out of 19 substitute teachers, 17 (89%) identified as black.

¶ 21    In rebuttal, petitioner told the investigator that he asked Orseno, rather than Anderson, about his daughter because his daughter said it was Orseno who told her to sit during gym class. Petitioner denied having parked by Orseno. He stated that instead, he had parked on a public street while he waited for his daughter. Petitioner also denied having yelled in the hallway at the school. He explained that he was speaking with a friend and that cameras in the school hallway would

show he was not yelling. Petitioner denied having made any comments to Orseno about her looks or clothing, and stated that there were no witnesses to prove anything she said.

¶ 22    After reviewing the evidence, the investigator recommended a finding of lack of substantial evidence to support petitioner's charge of discrimination and retaliation. Regarding Count A and Count B, the investigator explained that the evidence showed petitioner was discharged because he violated the workplace harassment policy, not because of his race or complexion. The investigator noted that no evidence suggested any non-black or darker complexioned employee who engaged in comparable conduct had not been discharged by District 132. Regarding Count C, the investigator explained that no evidence supported petitioner's claim that his discharge was in retaliation for telling the principal and the dean of students that Orseno was defaming him or that District 132 was discriminating against him because of the color of his skin. Rather, as with the other counts, petitioner was discharged for violating District 132's policy on harassment in the workplace. On October 15, 2019, the Department dismissed petitioner's charge of discrimination and retaliation.

¶ 23    On January 17, 2020, petitioner filed a request for review with the Commission.[2] On June 9, 2020, the Commission sustained the Department's dismissal of the charge for lack of substantial evidence. The Commission explained that the evidence was insufficient to establish a *prima facie* case of discrimination because there was no evidence that District 132 treated a similarly situated

_____

[2]The Illinois Human Rights Act provides that if a petitioner chooses to have the Commission review the Department's dismissal order, "he or she shall file a request for review with the Commission within 90 days after receipt of the [Department's] notice." 775 ILCS 5/7A-102(D)(3) (West 2018). The record does not indicate when petitioner received notice of the Department's dismissal of his charge. However, the "Request for Review" form included in the record recites that petitioner's filing deadline date was January 21, 2020. Moreover, the Commission's order states that "[o]n January 17, 2020, the Petitioner filed this timely Request."

employee outside petitioner's protected classes more favorably under similar circumstances, and that the evidence was insufficient to establish a *prima facie* case of retaliation because there was no evidence that District 132 treated a similarly situated employee who did not engage in a protected activity more favorably under similar circumstances. The Commission further explained that District 132 articulated a non-discriminatory reason for its actions and there was no evidence that this reason was pretext for unlawful discrimination or retaliation.

¶ 24    Petitioner filed a timely petition for direct review in this court on June 24, 2020.

¶ 25    In his *pro se* brief, petitioner contends that his constitutional and human rights were violated by District 132. He asserts that he is "NOT Black, African-American, Colored, Negro, or any other dehumanizing term" and that "this case is not about my skin color or race because I am NOT a crayon." He states that he is a "natural, indigenous, aboriginal person of this land" and "a descendant of the Moroccan Empire." Petitioner alleges that some things he said to the Department investigator were not put on the record, including that he was hired by District 132 in 2006 and that he was a dependable substitute teacher. He questions Orseno's credibility, argues that the principal acted unprofessionally and inappropriately, denies that he made "threats" at a school board meeting, and maintains that he attempted to appeal District 132's "no trespass notice." Finally, petitioner argues that his name was taken off the substitute teacher list because he asked questions about why his daughter was unable to participate in gym class. As relief, he requests $5 million in damages.

¶ 26    As an initial matter, we note that petitioner's brief is lacking in many respects. Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020) requires that an appellant's brief contain argument supported by citations to the authorities and the pages of the record relied on. "A failure

to cite relevant authority violates Rule 341 and can cause a party to forfeit consideration of the issue." *Kic v. Bianucci*, 2011 IL App (1st) 100622, ¶ 23. Moreover, when an appellant fails to comply with Rule 341, this court may strike the brief and dismiss the appeal. *Holzrichter v. Yorath*, 2013 IL App (1st) 110287, ¶ 77. An appellant's *pro se* status does not relieve him of his obligation to comply with Rule 341. *Wing v. Chicago Transit Authority*, 2016 IL App (1st) 153517, ¶ 7.

¶ 27    In his brief, petitioner cites only one case, *Kent v. Dulles*, 357 U.S. 116, 125 (1958), which does not involve a review of an order of the Commission sustaining a dismissal for lack of substantial evidence. He also includes a bare citation to Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e *et seq.* (2018)), but does not attempt to apply this statute to his case beyond stating that it prohibits discrimination against employees "based on origin." Petitioner has not included any citations to the record. In these circumstances, we would be justified in striking petitioner's brief and dismissing the appeal. *Holzrichter*, 2013 IL App (1st) 110287, ¶ 77.

¶ 28    However, while the insufficiency of petitioner's brief hinders our review, meaningful review is not completely precluded, as, for the most part, the merits of the case can be ascertained from the record on appeal. This court may entertain the appeal of a party who files an insufficient brief "so long as we understand the issue [the party] intends to raise and especially where the court has the benefit of a cogent brief of the other party." *Twardowski v. Holiday Hospitality Franchising, Inc.*, 321 Ill. App. 3d 509, 511 (2001). Here, both the State respondents and District 132's Board of Education have filed cogent briefs, and it is clear that petitioner is challenging the dismissal of his charge of discrimination and retaliation. Accordingly, we choose to reach the merits of petitioner's appeal.

¶ 29    The Illinois Human Rights Act (Act) provides that it is a civil rights violation for an employer to discharge an individual "on the basis of unlawful discrimination." 775 ILCS 5/2-102(A) (West 2018). "Unlawful discrimination" includes "discrimination against a person because of his or her actual or perceived: race [or] color ***." *Id.* § 1-103(Q). It is also a civil rights violation to retaliate against a person because he has opposed what he "reasonably and in good faith believes to be unlawful discrimination *** in employment ***." *Id.* § 6-101(A).

¶ 30    Under the Act, upon the filing of a discrimination charge, the Department must conduct a full investigation of the allegations and prepare a written report. *Id.* § 7A-102(C)(1), (D)(1). The Department must then review the report to determine whether there is "substantial evidence" that the alleged discrimination has occurred. *Id.* § 7A-102(D)(2). "Substantial evidence," as defined by the Act, is "evidence which a reasonable mind accepts as sufficient to support a particular conclusion and which consists of more than a mere scintilla but may be somewhat less than a preponderance." *Id.* § 7A-102(D)(2).

¶ 31    If the Department determines that there is no substantial evidence to support the allegation, the charge is dismissed. *Id.* § 7A-102(D)(3). The petitioner may seek review by the Commission of the dismissal. *Id.* If the Commission sustains the dismissal, the petitioner may seek review in the appellate court. *Id.* § 8-111(B)(1).

¶ 32    We review the decision of the Commission, not the Department. *Alcequeire v. Human Rights Commission*, 292 Ill. App. 3d 515, 519 (1997). The Commission's findings of fact are entitled to deference and "shall be sustained unless the court determines that such findings are contrary to the manifest weight of the evidence." 775 ILCS 5/8-111(B)(2) (West 2018). However, the Commission's ultimate decision to sustain the dismissal of a charge will be reversed only if

the decision was arbitrary and capricious or an abuse of discretion. *Stone v. Department of Human Rights*, 299 Ill. App. 3d 306, 314 (1998). A decision is arbitrary and capricious if it contravenes legislative intent, fails to consider a critical aspect of the matter, or offers an explanation so implausible that it cannot be considered as a result of the exercise of the agency's expertise. *Young v. Illinois Human Rights Commission*, 2012 IL App (1st) 112204, ¶ 33. An abuse of discretion will be found where no reasonable person could agree with the Commission's decision. *Id.* Under this standard, we may not reweigh the evidence or substitute our judgment for that of the Commission. *Id.*

¶ 33    When an employee alleges a violation of the Act, he has the initial burden of proving a *prima facie* case of unlawful discrimination by a preponderance of the evidence. *Young*, 2012 IL App (1st) 112204, ¶ 34. To establish a *prima facie* case of employment discrimination, there must be evidence that (1) the employee is a member of one or more protected classes; (2) he was meeting his employer's reasonable work expectations; (3) he was subject to an adverse action; and (4) similarly situated individuals who were not in his protected class or classes were treated more favorably. *Id.*

¶ 34    Once a petitioner establishes a *prima facie* case, "the employer must articulate, not prove, a legitimate, nondiscriminatory basis for its action." *C.R.M. v. Chief Legal Counsel of Illinois Department of Human Rights*, 372 Ill. App. 3d 730, 733 (2007). If the employer articulates such a reason, then the burden shifts back to the petitioner to prove by a preponderance of the evidence that the employer's articulated reason was not true and was a pretext for unlawful discrimination. *Id.* A petitioner's failure "to present substantial evidence of a *prima facie* discrimination claim or

to disprove an employer's articulated reason for discharge warrants dismissal of the charge." *Owens v. Department of Human Rights*, 356 Ill. App. 3d 46, 52 (2005).

¶ 35 Here, petitioner failed to make a *prima facie* case of employment discrimination based on his race or complexion, the two protected classifications he alleged in his charge.[3] There is no evidence in the record to support a finding that any similarly situated employee who was not a member of petitioner's protected classes received more favorable treatment in comparable circumstances. See *Young*, 2012 IL App (1st) 112204, ¶¶ 47-48. In addition, the evidence showed that petitioner was not meeting his employer's reasonable work expectations, as he was acting inappropriately and unprofessionally toward coworkers in violation of the workplace harassment policy. See *id.*

¶ 36 Further, even if petitioner had established a *prima facie* case, District 132 articulated a legitimate, nondiscriminatory reason for petitioner's discharge: he violated the workplace harassment policy. See *id.* ¶ 47. Petitioner did not present any evidence showing that District 132's reason for discharging him was pretextual. Accordingly, the Commission did not abuse its discretion or act arbitrarily and capriciously in affirming the dismissal of petitioner's charge of discrimination for lack of substantial evidence.

¶ 37 The Commission also correctly found that petitioner failed to establish District 132's actions were taken in retaliation for his having complained about discrimination. To establish a *prima facie* case of retaliation, a petitioner must show that (1) he was engaged in a protected

---

[3]In its brief, District 132's Board of Education argues that petitioner, by asserting in this court that he is not "Black, African-American, Colored, [or] Negro," has abandoned the bases he originally pled in his charge of discrimination. Nevertheless, where petitioner contended in his charge that he was discharged due to his complexion and race, we review the Commission's evaluation of those contentions here.

activity; (2) his employer committed a material adverse action against him; and (3) a causal nexus existed between the protected activity and the adverse act. *Hoffelt v. Illinois Department of Human Rights*, 367 Ill. App. 3d 628, 634 (2006). A *prima facie* case of retaliatory discharge can be established by showing a short time span between engaging in a protected activity and the employer's adverse action. *Id.* at 638. If an employee establishes a *prima facie* case, a rebuttable presumption of unlawful retaliation arises. *Id.*

¶ 38 To rebut the presumption, the employer must articulate a legitimate, nondiscriminatory reason for the action. *All Purpose Nursing Service v. Illinois Human Rights Comm'n*, 205 Ill. App. 3d 816, 827 (1990). If the employer articulates such a reason, the burden then shifts back to the employee to prove, by a preponderance of the evidence, that the legitimate reasons offered by the employer were a pretext for discrimination. *Id.*

¶ 39 Here, petitioner was discharged on March 21, 2018, about 10 weeks after he complained to the principal and the dean of students on January 9, 2018, that District 132 was discriminating against him. Even if we were to find that 10 weeks constitutes a "short time span," District 132 articulated a legitimate, nondiscriminatory reason for discharging petitioner: he acted inappropriately and unprofessionally toward coworkers in violation of the workplace harassment policy. District 132 supported this reason with evidence of complaints from Orseno and Crocello regarding his behavior. Petitioner has presented no evidence that District 132's reason for discharging him was pretextual and unworthy of belief. See *All Purpose Nursing Service*, 205 Ill. App. 3d at 827. As such, petitioner failed to establish that his discharge was in retaliation for complaining about discrimination. Based on the record before us, we cannot say that the

Commission abused its discretion or acted arbitrarily and capriciously in sustaining the dismissal of the charge of retaliation for lack of substantial evidence.

¶ 40    For the reasons explained above, we affirm the decision of the Commission.

¶ 41    Affirmed.