2026 IL App (1st) 240938-U

No. 1-24-0938

Order filed January 20, 2026

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| JERICO MATIAS CRUZ, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | Petition for Direct Review of an |
| v. | ) | Order of the Illinois Human |
| | ) | Rights Commission |
| THE HUMAN RIGHTS COMMISSION, | ) | |
| DEPARTMENT OF HUMAN RIGHTS, and LAEC, LLC | ) | Charge No. 2022 CP 2268 |
| d/b/a THE JAFFE COMPANIES, | ) | |
| | ) | |
| Respondents-Appellees. | ) | |

JUSTICE ELLIS delivered the judgment of the court.
Presiding Justice Van Tine and Justice D.B. Walker concurred in the judgment.

**ORDER**

¶ 1     *Held*:   Affirmed. Human Rights Commission did not abuse its discretion in upholding dismissal of petitioner's charge for lack of substantial evidence of discrimination.

¶ 2     Petitioner Jerico Matias Cruz filed a charge of discrimination with the Illinois

Department of Human Rights (IDHR) pursuant to the Illinois Human Rights Act (Act). 775

ILCS 5/1-101 *et seq.* (West 2022). He alleged that LAEC, LLC d/b/a The Jaffe Companies

(LAEC) discriminated against him based on race, color, national origin, military status, ancestry, and citizenship status. The IDHR dismissed the charge for lack of substantial evidence. Cruz sought review with the Illinois Human Rights Commission (Commission), which upheld the finding. Cruz, *pro se*, filed a direct appeal with this Court. We affirm the Commission's decision.

¶ 3     Cruz filed a charge with the IDHR on June 26, 2022 and perfected it on January 5, 2023. He alleged that on May 29, 2022, he was in Target's parking lot, which was property managed by LAEC. Cruz alleged that a security guard denied him full and equal enjoyment of Target's facility based on his race (Asian), ancestry (Filipino), national origin (Philippines), military status (U.S. armed forces veteran), citizenship status (naturalized U.S. citizen), and color (light-complexioned). He further alleged that LAEC treated similarly situated patrons who were not from his protected categories more favorably under similar circumstances.

¶ 4     The IDHR investigated Cruz's charge and prepared a report. As part of its investigation, the IDHR investigator interviewed the following individuals: Cruz; Michael Jaffe, an owner of LAEC; and Yeani Yi, an independent consultant for LAEC. The report noted as uncontested facts that LAEC is a leasing company that identifies and helps secure prospective tenants for the shopping center. On May 29, 2022, LAEC was contacted following an incident involving Cruz at a Target store located at the 4600 block of West Foster Avenue in Chicago, Illinois. We summarize the evidence obtained through the investigation.

¶ 5     Cruz told the IDHR investigator that he was a frequent customer at the Target, which was LAEC's tenant and located on property owned and managed by LAEC. Cruz did not know whether a contract or agreement existed between Target and LAEC. Cruz did not know Target's solicitation policies and procedures about collecting petitions outside its retail locations.

¶ 6     On May 29, 2022, Cruz entered the Target and informed a security guard that he would be outside the store in the parking lot collecting petition signatures for his political campaign. He gave the security guard a copy of his flyer and election information. The security guard did not say anything in return. Cruz then collected signatures in the parking lot. For individuals agreeing to sign his petition, Cruz asked them whether they lived within the area for which he was collecting signatures.

¶ 7     A Target manager and security guard approached Cruz outside and told him that he had to leave because a customer had complained. Cruz explained that he had "the right to collect petitions," and he was not soliciting money or selling any products or services to Target customers. He refused to leave, he said, because he was not violating any law. The Target manager contacted the security guard who monitored the shopping center. The security guard worked for MVP Securities, Inc. (MVP), which Cruz believed was contracted by LAEC. An MVP security guard arrived and asked Cruz to leave.

¶ 8     After Cruz refused to leave, the security guard called 911, in Cruz's opinion "to publicly remove and humiliate him." A Chicago police officer informed Cruz that if he did not move to the sidewalk, he would be arrested for trespass. To avoid a "false arrest," Cruz left the parking lot but remained in the store's vicinity. (Cruz filed another charge, arising out of the same incident, against Target. See *Cruz v. Human Rights Commission*, 2026 IL App (1st) 240973-U.)

¶ 9     During the incident, no comments were made regarding Cruz's race, color, national origin, ancestry, military status, or citizenship status, nor did Cruz disclose any of his protected statuses to the guard. To Cruz's knowledge, he was the only person collecting signatures for political candidacy that day.

¶ 10    Jaffe told the investigator that LAEC was only a leasing company, which markets and finds tenants for the shopping center. He was not onsite on the day of the incident. LAEC did not manage or own the Target store and had no authority over the shopping center's operation. LAEC did not contract, employ, or manage MVP security guards. As a real estate leasing company, LAEC was notified when anything happened at the shopping center. Jaffe was not aware of the actions the security guard took regarding the incident, as LAEC did not own or control the shopping center.

¶ 11    Yi stated that she was an independent consultant who oversaw maintenance of the shopping center. She was not onsite when the incident occurred. A Target manager contacted her regarding several customer complaints that Cruz was inside the store "aggressively" asking customers for signatures, then approaching customers outside the store, and the customers "felt uncomfortable" by Cruz. She contacted MVP to check on the situation, and an MVP security guard was dispatched. Yi reported the incident to Jaffe. Yi did not know what steps the security guard took regarding Cruz.

¶ 12    In response to the investigator's request for LAEC's policies and procedures for customer incidents reported by Target or any lessee, LAEC stated that it had no such policies. LAEC explained that it was only a leasing company, which had no role or responsibility regarding any customer incidents or other matters that occurred on Target or any lessee's property. LAEC had no ownership, control, or management rights to the property.

¶ 13    In rebuttal, Cruz stated that the video footage he provided the investigator showed that he was only requesting signatures and petitions in the parking lot, not inside the Target. He believed that his political activities were exempt from any local ordinance regarding solicitation and not in

violation of any state or federal laws for disseminating electioneering information. He described the shopping center's parking lot as a place of public accommodation. Cruz left a voicemail for LAEC on the date of the incident before the police arrived but did not receive a return call.

¶ 14    The investigator recommended a finding of a lack of substantial evidence on all counts. Specifically, the investigator noted that LAEC was a real estate company and had no role in the management, ownership, daily operations, or control of the Target property. It noted that, other than being informed of the event, LAEC had nothing to do with the incident. Furthermore, Cruz conceded that he never disclosed his protected bases to LAEC, nor did he have any contact with an LAEC employee during the incident. The investigator found no evidence of an animus based on race, ancestry, national origin, military status, citizenship status, or color.

¶ 15    On August 24, 2023, the IDHR accepted the investigator's recommendations and dismissed Cruz's charge for lack of substantial evidence.

¶ 16    Cruz requested the Commission review the dismissal of his charge. In his request for review, Cruz asserted that Jaffe was part owner of LAEC, which was "an operator or a lessee" of the shopping center named Mayfair Edens Collection (Mayfair), and part owner of Mayfair. LAEC discriminated against him when Target, a "lessor" of Mayfair, and MVP, a third-party contractor of Mayfair, called 911 to "publicly remove and humiliate" him during the petitioning period of his political candidacy in the November 8, 2022, general election for the U.S. Representative, 5th Congressional District. Cruz attached multiple exhibits, including emails with the IDHR investigator, an annotated copy of the IDHR's findings, photographs or still images of the video footage from incident with handwritten annotations, and statistics of the November 8, 2022, congressional election.

¶ 17 On April 16, 2024, the Commission issued a final order sustaining the dismissal for lack of substantial evidence. The Commission found that "other than [Cruz]'s speculation, there was no evidence the LAEC owned or managed the property" where Target was located. The Commission considered leasing companies similar to private security firms, which it had determined were not places of public accommodation, because "their services are not extended, offered, sold, or otherwise made available to the general public."

¶ 18 The Commission also found no evidence that LAEC took any action that denied Cruz the full benefits and enjoyment of Target or its parking lot. The Commission noted Cruz's claim that Jaffe was an owner of Mayfair, which owned the shopping center, but explained that even in that scenario, LAEC was a separate entity from Mayfair and his "quarrel" would not be with LAEC. The Commission found that there was insufficient evidence to show that Cruz was asked to leave based on any of his protected statuses. The Commission finally noted that citizenship status is not a protected class for public accommodation claims under the Act.

¶ 19 On appeal, Cruz seeks reversal of the Commission's decision sustaining the dismissal of his charge.

¶ 20 As a preliminary matter, we agree with the Commission that Cruz arguably forfeited review of the Commission's decision on the merits. Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020) requires a brief to "contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on." The Rule further provides that "[p]oints not argued are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing." *Id.*

¶ 21 Here, Cruz argues that the Commission failed to properly review the "*prima facie*" evidence, material facts, and attached exhibits submitted with his request for review and "procedurally follow" the review process provided under the Act and the administrative code. But Cruz does not develop a cognizable argument, supported by relevant authority, addressing the basis for the dismissal of his charge, *i.e.*, that he failed to establish a *prima facie* case of discrimination against LAEC. Regardless, as the issues are not complex and we have the benefit of a cogent response brief, we will consider the merits of his appeal. See *Twardowski v. Holiday Hospitality Franchising, Inc.*, 321 Ill. App. 3d 509, 511 (2001) (finding meaningful review was not precluded, as merits of appeal could be ascertained from record).

¶ 22 When a charge alleging a civil rights violation under the Act is filed, the IDHR must investigate the allegations and may dismiss a charge if there is no "substantial evidence" supporting the charge. 775 ILCS 5/7A-102(C), (D)(3) (West 2022). "[S]ubstantial evidence" is defined as "evidence which a reasonable mind accepts as sufficient to support a particular conclusion and which consists of more than a mere scintilla but may be somewhat less than a preponderance." *Id*. § 7A-102(D)(2). "[M]ere speculation and conjecture does not constitute substantial evidence." *Folbert v. Department of Human Rights*, 303 Ill. App. 3d 13, 25 (1999).

¶ 23 After a dismissal, the complainant may request the Commission's review. 775 ILCS 5/7A-102(D)(3) (West 2022). If the Commission sustains the dismissal, as here, the complainant may seek review of the Commission's order directly in this court. *Id*. § 8-111(B)(1).

¶ 24 This court reviews the decision of the Commission, not the IDHR. See *Zaderaka v. Illinois Human Rights Comm'n*, 131 Ill. 2d 172, 180 (1989). We review the Commission's decision for an abuse of discretion. *Young v. Illinois Human Rights Comm'n*, 2012 IL App (1st)

112204, ¶ 32. We will reverse a dismissal only where the Commission's decision was arbitrary or capricious. *Owens v. Department of Human Rights*, 403 Ill. App. 3d 899, 917 (2010). A decision is arbitrary or capricious where "it contravenes legislative intent, fails to consider a critical aspect of the matter, or offer[s] an explanation so implausible that it cannot be considered as the result of an exercise of the agency's expertise." *Young*, 2012 IL App (1st) 112204, ¶ 33.

¶ 25    Section 5-102(A) of the Act states that a civil rights violation occurs when a person, on the basis of unlawful discrimination, denies or refuses to another person "the full and equal enjoyment of the facilities, goods, and services of any public place of accommodation." 775 ILCS 5/5-102(A) (West 2022). Unlawful discrimination includes discrimination on the basis of, among other factors: race, color, national origin, ancestry, and military status. *Id*. § 1-103(Q).

¶ 26    A complainant may prove discrimination by presenting direct evidence of discrimination, such as proof of a racial slur or a written or oral admission, or through indirect evidence. *Board of Education of City of Chicago v. Cady*, 369 Ill. App. 3d 486, 495 (2006); *Lalvani v. Illinois Human Rights Comm'n*, 324 Ill. App. 3d 774, 790 (2001). Because there was no direct evidence of discrimination, Cruz needed to establish unlawful discrimination through indirect evidence.

¶ 27    To show indirect evidence of discrimination, the complainant must establish a *prima facie* case of unlawful discrimination by a preponderance of the evidence. *Young*, 2012 IL App (1st) 112204, ¶ 34. That is, the complainant must show that he (1) is a member of a protected class, (2) attempted to exercise the right to full benefits and enjoyment of a place of public accommodation, (3) was denied those benefits and enjoyment, and (4) was treated less favorably than similarly situated persons outside his protected class. *Dunn v. Human Rights Comm'n*, 2022 IL App (1st) 211155-U, ¶ 34.

¶ 28    At the outset, the Commission did not abuse its discretion in dismissing the charge of discrimination based on citizenship status, as it is not a protected class in public accommodation claims under the Act. See 775 ILCS 5/2-101(K) (West 2022) (citizenship status is only protected under Article 2 of the Act, which covers employment).

¶ 29    We also find that Cruz failed to establish a *prima facie* case of unlawful discrimination. Cruz alleged that he had "the right to collect" petition signatures in the parking lot and had not been violating any laws when the security guard called 911 "to publicly remove and humiliate him," leading to him eventually leaving the parking lot.

¶ 30    But the record fails to demonstrate that LAEC, a real estate leasing company, is a place of public accommodation or operates a place of public accommodation, let alone that it denied Cruz the full and equal enjoyment of any public place of accommodation. Section 5-101(A) of the Act provides a nonexclusive list of places defined as a "place of public accommodation." *Id*. § 5-101(A). By way of example, a place of public accommodation includes "a baker, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment." See *Id*. A real estate leasing company is not included in the enumerated list of places of public accommodation set forth in section 5-101(A).

¶ 31    Additionally, section 5-101(B) defines "operator" as "any owner, lessee, proprietor, manager, superintendent, agent, or occupant of a place of public accommodation or an employee of any such person or persons." *Id*. § 5-101(B) (West 2022). Real estate leasing company LAEC again does not fit within the definition, and there is no evidence in the record that LAEC played a role in the management, ownership, daily operations, or control of Target and the shopping

center. Likewise, there was no evidence that LAEC contracted MVP to provide security for the property.

¶ 32    Further, the record shows that no LAEC employees were present or participated in the incident. Cruz's phone call to Jaffe while the incident unfolded was not answered, and he did not speak to any employee of the company during the incident. In fact, Cruz presented no evidence that LAEC was involved in the incident or that it took any action that prevented him access to the Target store or its parking lot. He thus cannot establish a *prima facie* case of discrimination in public accommodation, because he failed to show that LAEC denied him the right to full benefits and enjoyment of a place of public accommodation.

¶ 33    Though the Commission raised other bases for sustaining the dismissal of Cruz's charge, we need not address them, as Cruz's failure to satisfy one element of a *prima facie* case defeats his discrimination claim. *Folbert*, 303 Ill. App. 3d at 25. The Commission's final order, sustaining the IDHR's dismissal of his discrimination charge for lack of substantial evidence, was not an abuse of discretion.

¶ 34    As a final matter, we note that Cruz submitted documents as an appendix to his brief that are not included in the record on appeal, but we cannot consider facts and evidence not presented to the Commission. See 735 ILCS 5/3-110 (West 2022) ("No new or additional evidence in support of or in opposition to any finding, order, determination, or decision of the administrative agency shall be heard by the court.").

¶ 35    For these reasons, the final order of the Commission is affirmed.

¶ 36    Affirmed.