2026 IL App (1st) 240973-U

No. 1-24-0973

Order filed January 20, 2026

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| JERICO MATIAS CRUZ, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | Petition for Direct Review of an |
| v. | ) | Order of the Illinois Human |
| | ) | Rights Commission |
| THE HUMAN RIGHTS COMMISSION, | ) | |
| DEPARTMENT OF HUMAN RIGHTS, and TARGET | ) | Charge No. 2022 CP 2267 |
| CORPORATION d/b/a TARGET STORE, | ) | |
| | ) | |
| Respondents-Appellees. | ) | |

JUSTICE ELLIS delivered the judgment of the court.
Presiding Justice Van Tine and Justice D.B. Walker concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Affirmed. Human Rights Commission did not abuse its discretion in upholding dismissal of petitioner's charge for lack of substantial evidence of discrimination.

¶ 2    Petitioner Jerico Matias Cruz filed a charge of discrimination with the Illinois

Department of Human Rights (IDHR) pursuant to the Illinois Human Rights Act (Act). 775

ILCS 5/1-101 *et seq.* (West 2022). He alleged that Target Corporation d/b/a Target Store

(Target) discriminated against him based on race, color, national origin, military status, ancestry, and citizenship status. The IDHR dismissed the charge for lack of substantial evidence. Cruz sought review with the Illinois Human Rights Commission (Commission), which sustained the finding. Cruz filed a direct appeal *pro se* with this Court. We affirm for the reasons below.

¶ 3     On June 26, 2022, Cruz filed a charge with the IDHR, which he perfected on March 5, 2023. He alleged discrimination by a Target store located on the 4600 block of West Foster Avenue, in Chicago, Illinois, where he was denied full and equal enjoyment of the facility based on his race (Asian), color (light-complexioned), national origin (Philippines), military status (U.S. armed forces veteran), ancestry (Filipino), and citizenship status (naturalized U.S. citizen).

¶ 4     Cruz alleged that on May 29, 2022, while he was in Target's parking lot collecting signatures for his political candidacy petition, a security guard employed by MVP Securities, Inc. (MVP) told him to leave the property because they believed that he was soliciting money or selling products and services. He further alleged that Target treated similarly situated patrons who were not from his protected categories more favorably under similar circumstances. (Cruz filed another charge, arising out of the same incident, against the leasing company for this property. See *Cruz v. Human Rights Commission*, 2026 IL App (1st) 240938-U.)

¶ 5     The IDHR investigated Cruz's charge and prepared a report. As part of its investigation, the investigator interviewed the following individuals: Cruz; Dalin Monge Sagatume, a security supervisor for the Target; Darryl Gilmore, Target Executive Team Lead; and Yeani Yi, an independent consultant. The report noted as uncontested facts that Target operates as a retail store that offers home goods, clothing, electronics, groceries, and other goods to consumers. We summarize the evidence obtained through the investigation.

¶ 6    Cruz told the investigator that he was a frequent customer at the Target store. On May 29, 2022, he was collecting signatures for his political candidacy petition in front of the Target. To his knowledge, the store and its parking lot were tenants of LAEC, LLC d/b/a The Jaffe Companies, which owned the property. Cruz never disclosed his race, color, national origin, ancestry, or citizenship status to Target. He had disclosed his military status a few years prior on the application for a rewards account he completed with Target. Cruz was not aware of Target's discrimination or solicitation policies.

¶ 7    On May 29, 2022, Cruz entered the Target store and informed the security guard that he intended to collect signatures for his political campaign petition. He gave the security guard a copy of his flyer and election information. The security guard did not say anything in response. As Cruz collected signatures in the parking lot in front of Target, Gilmore and a Target security officer told him that he needed to leave because a customer had complained about him. He explained to them that he had the right to collect signatures and was not soliciting money or selling products to Target customers.

¶ 8    After Cruz refused to leave, Gilmore contacted MVP, the security firm that monitored the shopping center. An MVP security guard arrived and asked Cruz to leave. When Cruz refused to leave, the security guard called 911 to (in Cruz's eyes) "publicly remove and humiliate him." A Chicago police department officer arrived and informed Cruz that if he did not move to the sidewalk, he would be arrested for criminal trespass. Cruz then voluntarily left the parking lot but remained in the store's vicinity.

¶ 9    Cruz stated that no comments were made regarding his race, color, national origin, ancestry, military status, or citizenship status. Cruz believed that he was the only person

collecting petitions for political candidacy on May 29, 2022. He asserted he was denied full and equal enjoyment of Target's facility based on his protected classes because Gilmore called MVP, the MVP security guard called the police, and the police asked him to leave.

¶ 10    According to Sagastume, Target had a "No Solicitation and Distribution" policy, which prohibited soliciting and distributing literature inside or outside Target stores, including parking lots and sidewalks. The investigation report included as an exhibit a copy of Target's no-solicitation policy, which stated clearly that all third-party solicitation is prohibited on its leased and owned properties.

¶ 11    Gilmore told investigators that Cruz had multiple incidents at that store, but he was unaware of an incident on May 29, 2022. Gilmore recounted an incident on June 16, 2022, where several customers complained that Cruz was outside the store's entrance "aggressively" asking customers for signatures for his political campaign. Multiple customers reported that they felt "uncomfortable" by Cruz when he continued to follow them after declining to sign his petition. Target's "no solicitation" policy had been explained to Cruz, and he became defensive and continued to refuse to leave. MVP called the police, and when a police officer arrived, Cruz began video recording the officer. Cruz was asked again to leave the property, and he complied. Gilmore prepared an incident report relating to the incident on June 16, 2022. He stated that the "no solicitation" policy applied to anyone regardless of any protected category.

¶ 12    Yi testified that she was not an employee of Target and was not onsite at the time of the incident. A manager at Target contacted Yi regarding customer complaints that Cruz was inside the store "aggressively" asking customers for signatures and then approaching customers outside

the store for signatures. She contacted MVP to check on the situation, and an MVP security guard was dispatched.

¶ 13    In rebuttal, Cruz stated that he believed his political activities were exempt from any local ordinance regarding solicitation, as the parking lot was a place of public accommodation. He further believed his political activities were exempt and not in violation of any state or federal laws for disseminating electioneering information.

¶ 14    The investigator recommended a finding of a lack of substantial evidence on all counts. Specifically, the investigator noted that Target prohibits the solicitation and collection of signatures for petitions anywhere on its owned or leased properties, including parking lots and sidewalks. Although Target was not aware of an incident involving Cruz on May 29, 2022, the investigation revealed that an incident occurred on June 16, 2022. During that June incident, Cruz was aggressively asking for signatures outside of the store and when Target explained its "no solicitation" policy to Cruz, he refused to leave, which led to MVP calling the police. Cruz did not identify any patrons, not of his protected statuses, who were treated more favorably under similar circumstances, nor did he provide any evidence that Target's explanation was pretextual. The investigator found no evidence of an animus or denial of equal enjoyment based on race, ancestry, national origin, military status, citizenship status, or color.

¶ 15    On November 13, 2023, the IDHR accepted the investigator's recommendations and dismissed Cruz's charge for lack of substantial evidence.

¶ 16    Cruz sought review with the Commission. In his request for review, Cruz asserted that Target violated his public accommodation rights because political activities were exempt from any local ordinance regarding solicitation. He contended that Gilmore made false statements that

led to MVP's "poor judgment" decision to call 911 to "publicly remove and humiliate" him during the petitioning period of his political candidacy for the U.S. Representative, 5th Congressional District. Cruz attached multiple exhibits, including emails with the IDHR investigator, an annotated copy of the IDHR's findings, photographs or still images of the video footage from the incident with handwritten annotations, and statistics of the November 8, 2022, congressional election.

¶ 17    On April 16, 2024, the Commission issued a final order sustaining the dismissal for lack of substantial evidence. The Commission noted that Target did not have a record of an incident on May 29, 2022, but that there was record of an incident on June 16, 2022, where Cruz made customers uncomfortable while soliciting signatures. The Commission found that Cruz failed to identify similarly situated persons outside his protected class who were *not* asked to leave Target's property after soliciting customers to sign a petition. The Commission also noted that citizenship status is not a protected class for public accommodation claims under the Act.

¶ 18    On appeal, Cruz seeks reversal of the Commission's decision sustaining the dismissal of his charge.

¶ 19    As a preliminary matter, we agree with the Commission that Cruz arguably forfeited review of the Commission's decision on the merits. Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020) requires a brief to "contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on." The Rule further provides that "[p]oints not argued are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing." *Id*.

¶ 20    Here, Cruz argues that the Commission failed to properly review the "*prima facie*" evidence, material facts, and attached exhibits submitted with his request for review and "procedurally follow" the review process provided under the Act and the administrative code. But Cruz does not develop a cognizable argument, supported by relevant authority, addressing the basis for the dismissal of his charge, *i.e.*, that he failed to establish a *prima facie* case of discrimination against Target. Nevertheless, as the issues are not complex and we have the benefit of a cogent response brief, we consider the merits of his appeal. See *Twardowski v. Holiday Hospitality Franchising, Inc.*, 321 Ill. App. 3d 509, 511 (2001) (meaningful review was not precluded, as merits of appeal could be ascertained from record).

¶ 21    When a charge alleging a civil rights violation under the Act is filed, the IDHR investigates the allegations and may dismiss a charge if it finds no "substantial evidence" supporting the charge. 775 ILCS 5/7A-102(C), (D)(3) (West 2022). "[S]ubstantial evidence" is defined as "evidence which a reasonable mind accepts as sufficient to support a particular conclusion and which consists of more than a mere scintilla but may be somewhat less than a preponderance." *Id*. § 7A-102(D)(2). "[M]ere speculation and conjecture does not constitute substantial evidence." *Folbert v. Department of Human Rights*, 303 Ill. App. 3d 13, 25 (1999).

¶ 22    Following a dismissal, the complainant may request the Commission's review of the dismissal. 775 ILCS 5/7A-102(D)(3) (West 2022). If the Commission sustains the dismissal, the complainant may, as Cruz did here, seek review of the Commission's order directly in this court. *Id*. § 8-111(B)(1).

¶ 23    This court reviews the decision of the Commission, not the IDHR. See *Zaderaka v. Illinois Human Rights Comm'n*, 131 Ill. 2d 172, 180 (1989). We review the Commission's

decision for an abuse of discretion. *Young v. Illinois Human Rights Comm'n*, 2012 IL App (1st) 112204, ¶ 32. We will reverse a dismissal only if the Commission's decision was arbitrary or capricious. *Owens v. Department of Human Rights*, 403 Ill. App. 3d 899, 917 (2010). A decision is arbitrary or capricious if "it contravenes legislative intent, fails to consider a critical aspect of the matter, or offer[s] an explanation so implausible that it cannot be considered as the result of an exercise of the agency's expertise." *Young*, 2012 IL App (1st) 112204, ¶ 33.

¶ 24     Section 5-102(A) of the Act states that a civil rights violation occurs when a person, on the basis of unlawful discrimination, denies or refuses to another person "the full and equal enjoyment of the facilities, goods, and services of any public place of accommodation." 775 ILCS 5/5-102(A) (West 2022). Unlawful discrimination includes discrimination on the basis of, among other factors: race, color, national origin, ancestry, and military status. *Id*. § 1-103(Q). A retail store offering home goods, clothing, electronics, groceries, and other goods for sale is considered a place of public accommodation. See *Id*. § 5-101(A)(5).

¶ 25     A complainant may prove discrimination by presenting direct evidence of discrimination, such as proof of a racial slur or a written or oral admission, or through indirect evidence. *Board of Education of City of Chicago v. Cady*, 369 Ill. App. 3d 486, 495 (2006); *Lalvani v. Illinois Human Rights Comm'n*, 324 Ill. App. 3d 774, 790 (2001). Because there was no direct evidence of discrimination, Cruz needed to establish unlawful discrimination through indirect evidence.

¶ 26     To show indirect evidence of discrimination, the complainant bears the initial burden of establishing a *prima facie* case of unlawful discrimination by a preponderance of the evidence. *Young*, 2012 IL App (1st) 112204, ¶ 34. To establish a *prima facie* case of discrimination in public accommodation, a complainant must show that he (1) is a member of a protected class, (2)

attempted to exercise the right to full benefits and enjoyment of a place of public accommodation, (3) was denied those benefits and enjoyment, and (4) was treated less favorably than similarly situated persons outside his protected class. *Dunn v. Human Rights Comm'n*, 2022 IL App (1st) 211155-U, ¶ 34.

¶ 27    At the outset, the Commission did not abuse its discretion in dismissing the charge of discrimination based on citizenship status, as it is not a protected class in public accommodation claims under the Act. See 775 ILCS 5/2-101(K) (West 2022) (citizenship status is only protected under Article 2 of the Act which covers employment).

¶ 28    We further find that Cruz failed to establish a *prima facie* case of unlawful discrimination premised on the denial of full and equal enjoyment of Target and its parking lot facility on the basis of race, ancestry, national origin, military status, or color. Gilmore recounted an incident where Cruz was asked to leave Target property after customers complained that he was "aggressively" soliciting signatures for his political candidacy petition, which violated Target's "no solicitation" policy.

¶ 29    But Cruz failed to identify any persons outside his protected classes who solicited signatures for political campaign purposes in a Target parking lot who were treated more favorably. Thus, Cruz was unable to establish that he was "treated less favorably than similarly situated persons outside his protected class," and the Commission properly determined that he failed to establish a *prima facie* case of unlawful discrimination. (Internal quotation marks omitted.) *Dunn*, 2022 IL App (1st) 211155-U, ¶ 34. Thus, the Commission's final order sustaining the IDHR's dismissal of Cruz's discrimination charge for lack of substantial evidence was not an abuse of discretion.

¶ 30    As already stated, Cruz fails to develop any argument supported with relevant case law establishing that the Commission abused its discretion. Thus, nothing in his brief provides a basis for this court to overturn the Commission's decision in upholding the IDHR's dismissal of Cruz's discrimination charge against Target for lack of "substantial evidence." See *Folbert*, 303 Ill. App. 3d at 25. As a final matter, we note that Cruz submitted documents as an appendix to his brief that are not included in the record on appeal, but we cannot consider facts and evidence not presented to the Commission. See 735 ILCS 5/3-110 (West 2022) ("No new or additional evidence in support of or in opposition to any finding, order, determination, or decision of the administrative agency shall be heard by the court.").

¶ 31    The final order of the Commission is affirmed.

¶ 32    Affirmed.