2026 IL App (1st) 241008-U

No. 1-24-1008

Order filed January 27, 2026

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| JERICO MATIAS CRUZ, | ) | Petition for Direct |
| | ) | Administrative Review of a |
| Petitioner-Appellant, | ) | Decision of the Human Rights |
| | ) | Commission. |
| v. | ) | |
| | ) | Charge No. 2022 CP 1795 |
| THE ILLINOIS HUMAN RIGHTS COMMISSION, | ) | |
| ILLINOIS DEPARTMENT OF HUMAN RIGHTS, and | ) | |
| APPLE, INC., | ) | |
| | ) | |
| Respondents-Appellees. | ) | |

_____

JUSTICE ELLIS delivered the judgment of the court.
Justices McBride and D.B. Walker concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Affirmed. Illinois Human Rights Commission did not abuse its discretion in upholding determination of lack of substantial evidence of discrimination.

¶ 2    Petitioner, Jerico Matias Cruz, filed a charge of discrimination with the Illinois

Department of Human Rights (IDHR) pursuant to the Illinois Human Rights Act (Act). See 775

ILCS 5/1-101 *et seq.* (West 2022). The charge alleged that Apple, Inc. (Apple) discriminated

against him based on national origin, race, military status, and citizenship status. The IDHR dismissed the charge for lack of substantial evidence. Cruz requested a review with the Illinois Human Rights Commission (Commission), which sustained the finding. Cruz filed a direct appeal *pro se* with this court. We affirm for the reasons below.

¶ 3     On March 30, 2022, Cruz filed a charge with the IDHR, alleging Apple discriminated against him when it denied him the full and equal enjoyment of its facility based on his national origin (Philippines), race (Asian), military status (U.S. armed forces veteran), and citizenship status (U.S. citizen). For all these claims, he alleged that, on March 23, 2022, Apple called police to have him removed from its facility when he inquired about a service and a purchase. Cruz claimed that Apple treated patrons who were not from the Philippines, Asian, a U.S. armed forces veteran, or a U.S. citizen more favorably under similar circumstances.

¶ 4     The IDHR investigated Cruz's charge and prepared a report dated September 19, 2023. As part of its investigation, the IDHR's investigator interviewed Cruz and Apple manager Elizabeth Velasquez.

¶ 5     During the interview, Cruz stated that, on March 23, 2022, at about 11:25 a.m., he went to the Apple store in Skokie, Illinois, for an appointment at the "Genius bar" to have his laptop adapter replaced. He brought his dog into the store. The store was "very busy and loud," there were many customers in the store, and the radio was on very loud. Eventually, other customers "started saying [Cruz] was abusing the dog," and someone reported that he had kicked the dog. The Apple store manager told Cruz to take the dog outside. Store employees also told him he was being disruptive and "kept telling him to leave." Cruz told the IDHR that he thought "it had

something to do with the dog" because store employees only began interacting with him "when the dog got involved."

¶ 6     Eventually, Cruz went outside in front of the store and looked for another Apple store. A manager and a private security officer came outside and told Cruz he had to "stay away" from the store's vicinity. Cruz stated he was "not going anywhere." The manager and private security officer then accused him of trespassing and called the police. Two police officers arrived and told Cruz not to return to the Apple store or he would be arrested for trespassing. Animal control also arrived, checked the dog, and concluded there was no abuse to the dog. Cruz had not returned to that Apple store since March 23, 2022.

¶ 7     Cruz told the IDHR that Apple's employees "probably" assumed his race was Hispanic because of his name, and he believed he was denied the full and equal enjoyment of Apple's services because they thought he was Hispanic. He claimed that, had Apple known he was Asian, they would have treated him differently. Cruz stated that Apple "may not have been aware of his national origin," but employees saw his identification, which would have reflected his citizenship and veteran statuses. He believed he was denied full and equal enjoyment of Apple's services due to his citizenship and national origin based on "assumptions" made about his name. He also believed he was denied Apple's services due to his veteran status because he used his military status to get a discount. Cruz was not aware of how other customers were treated.

¶ 8     Velasquez told the IDHR that Apple practices its non-discrimination policies and conducts a "wide range of training" to create an inclusive workplace and customer experience. She stated there are "no types of people" Apple would not do business with, and Apple wants "everyone to feel welcome." Apple's customer discrimination policy states that discriminating

against any person based on national origin, race, citizenship, or "other characteristic" is against the law. Apple only checks a customer's identification or driver's license if the customer was picking up a repair or order. Apple would not ask a customer for identification if they were just coming in for an appointment at the Genius bar. Apple also trains its employees on how to de-escalate a customer interaction.

¶ 9      Velasquez told the IDHR that on March 23, 2022, she came out to the floor of the store and learned that Apple employees had been unable to help a customer with what he needed and directed him to contact Apple support. Cruz was on the phone in the store "getting loud" with Apple support. Velasquez asked him to lower his voice several times. When Cruz did not comply, she asked him to step outside. Cruz was unwilling to move. Velasquez then told Cruz she would need to contact the police because he was unwilling to lower his voice. By the time she called the police, Cruz had already left the store. Velasquez did not call animal control.

¶ 10      Velasquez was unaware that Cruz was asked not to return to the Apple store, and it would not have been Apple's policy to tell him that. She was unaware if Cruz returned to the store after March 23, 2022. Velasquez was also not aware of Cruz's national origin, race, military status, or citizenship and did not know how other employees would have been aware of his protected classes. She indicated that other customers had been asked to leave the store for various reasons, but Apple would not have been aware of their national origin, race, military status, or citizenship status. Apple provided the IDHR with documentation showing that 15 customers, including Cruz, were asked to leave the same Apple store between August 2021 and March 2022. Apple did not have the names for most of these customers or their protected categories, as these incidents involved one-time interactions.

¶ 11    In rebuttal, Cruz added that the police called animal control.

¶ 12    The investigator recommended a finding of lack of substantial evidence on all counts. The investigator found that Apple had a legitimate, non-discriminatory reason to ask Cruz to leave the store, as he was causing a disturbance by speaking loudly. Cruz failed to provide any support to link Apple's request that Cruz leave the store to his national origin, race, military status, or citizenship status. Cruz was also unable to identify, and the IDHR's investigation did not reveal, any patrons of different protected categories whom Apple treated more favorably under similar circumstances.

¶ 13    On September 28, 2023, the IDHR accepted the investigator's recommendations and dismissed Cruz's charge for lack of substantial evidence.

¶ 14    On December 12, 2023, Cruz filed a request for review with the Commission. He stated that he was removed from the Apple store based on false accusations that he was abusing his dog. He denied that he was talking loudly, as the store's radio was loud and other customers were "talking too loud in contrast." He also stated he provided *prima facie* evidence pursuant to the administrative code.

¶ 15    Cruz provided multiple exhibits, including his charge, the IDHR's investigation report, and email exchanges between him and the IDHR regarding his complainant questionnaire and amendments made to his charge. He also provided email exchanges with the IDHR in which Cruz claimed to have attached *prima facie* evidence and material facts for the case, along with police reports and medical records for his dog.

¶ 16    The IDHR filed a response to Cruz's request for review. The IDHR reiterated that its investigation did not reveal substantial evidence supporting Cruz's charge. It stated that, while

Cruz's request for review contained evidence that he did not abuse his dog, it lacked any evidence supporting his allegations that Apple denied him the full and equal enjoyment of its facilities and services due to his national origin, race, military status, or citizenship status.

¶ 17    Apple also filed a response, stating it "unequivocally denies" that it discriminated against Cruz, and it had a legitimate, non-discriminatory business purpose for asking Cruz to leave the store—Cruz's disruptive conduct.

¶ 18    On April 16, 2024, the Commission entered a final order sustaining the IDHR's dismissal for lack of substantial evidence. The Commission found that Cruz failed to identify similarly situated persons outside his protected class who were not asked to leave the store after refusing to lower their voices. The Commission also noted that citizenship status is not a protected class in public-accommodation claims under the Act.

¶ 19    Cruz timely filed a *pro se* petition for direct administrative review in this court. See 775 ILCS 5/8-111(B)(1) (West 2022); Ill. S. Ct. R. 335(a) (eff. July 1, 2017).

¶ 20    On appeal, Cruz seeks reversal of the Commission's decision sustaining the dismissal of his charge. We review the Commission's decision for an abuse of discretion. *Young v. Illinois Human Rights Comm'n*, 2012 IL App (1st) 112204, ¶ 32. We will not reverse the Commission's decision unless it is arbitrary or capricious, meaning "it contravenes legislative intent, fails to consider a critical aspect of the matter, or offer[s] an explanation so implausible that it cannot be regarded as the result of an exercise of the agency's expertise." *Id.* ¶ 33. We will not reweigh the evidence or substitute our judgment for that of the Commission. *Id.*

¶ 21    As a preliminary matter, we agree with the Commission that Cruz arguably forfeited a review of the Commission's decision on the merits. Specifically, Illinois Supreme Court Rule

341(h)(7) requires a brief to "contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on." Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). The rule further provides that "[p]oints not argued are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing." Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020).

¶ 22    Here, Cruz argues that the Commission failed to (i) "properly review" the exhibits attached to his request for review, (ii) "procedurally follow and review" his request for review as provided under the Act and the administrative code, and (iii) "properly review the *prima facie* evidence and material facts" in his complaint and request for review.

¶ 23    But he does not develop any cognizable argument, supported by relevant authority, addressing the basis for the dismissal of his charge: his failure to set forth a *prima facie* case of discrimination by identifying a single person of a non-protected class who received more favorable treatment from Apple under similar circumstances. We will consider the merits of his appeal regardless, as the issues are not complex, and we have the benefit of the appellees' briefs. See *Twardowski v. Holiday Hospitality Franchising, Inc.*, 321 Ill. App. 3d 509, 511 (2001) (meaningful review was not precluded, as merits of appeal could be ascertained from record).

¶ 24    Under the Act, the IDHR may dismiss a charge of discrimination if it finds no "substantial evidence" supporting the charge. 775 ILCS 5/7A-102(C), (D)(3) (West 2022). The Act defines "substantial evidence" as "evidence which a reasonable mind accepts as sufficient to support a particular conclusion and which consists of more than a mere scintilla but may be somewhat less than a preponderance" of proof. 775 ILCS 5/7A-102(D)(2) (West 2022). "[M]ere

speculation and conjecture does not constitute substantial evidence." *Folbert v. Department of Human Rights*, 303 Ill. App. 3d 13, 25 (1999).

¶ 25   A complainant may seek review of the IDHR's dismissal of the charge by filing a request for review with the Commission. 775 ILCS 5/7A-102(D)(3) (West 2022). The Commission "may consider the [IDHR's] report, any argument and supplemental evidence timely submitted, and the results of any additional investigation conducted by the [IDHR] in response to the request." *Id.* § 8-103(B). If the Commission sustains the dismissal, as here, the complainant may seek direct appellate review of the Commission's final determination. *Id.* § 8-111(B)(1).

¶ 26   A complainant may prove discrimination by presenting direct evidence of discrimination, such as proof of a racial slur or a written or oral admission, or through indirect evidence. *Board of Education of City of Chicago v. Cady*, 369 Ill. App. 3d 486, 495 (2006); *Lalvani v. Illinois Human Rights Comm'n*, 324 Ill. App. 3d 774, 790 (2001). Here, there was no direct evidence of discrimination, and so Cruz was required to establish unlawful discrimination through indirect evidence. To show indirect evidence of discrimination, the complainant bears the initial burden of establishing a *prima facie* case of unlawful discrimination by a preponderance of the evidence. *Young*, 2012 IL App (1st) 112204, ¶ 34.

¶ 27   Cruz asserted discrimination premised on the denial of full and equal enjoyment of Apple's facility in Skokie. Section 5-102(A) of the Act provides that it is a civil rights violation for any person, on the basis of unlawful discrimination, to "[d]eny or refuse to another the full and equal enjoyment of the facilities, goods, and services of any public place of accommodation." 775 ILCS 5/5-102(A) (West 2022). A retail store constitutes a public place of accommodation under the Act. *Id.* § 5-101(A)(5).

¶ 28   The Act defines "unlawful discrimination," in relevant part, as discrimination against a person because of his actual or perceived race, ancestry, national origin, military status, and color. *Id.* § 1-103(Q). To establish a *prima facie* case of discrimination in public accommodation, a complainant must show that (1) "he is a member of a protected class"; (2) "he attempted to exercise the right to full benefits and enjoyment of a place of public accommodation"; (3) "he was denied those benefits and enjoyment"; and (4) "he was treated less favorably than similarly situated persons outside his protected class." (Internal quotation marks omitted.) *Dunn v. Human Rights Comm'n*, 2022 IL App (1st) 211155-U, ¶ 34.

¶ 29   As an initial matter, the Act does not recognize citizenship status as a protected class for purposes of a public-accommodation claim under the Act. See 775 ILCS 5/1-103(Q) (West 2022). Thus, Cruz's count alleging discrimination based on citizenship status was properly dismissed on that ground. Beyond that, the Commission did not abuse its discretion in finding that Cruz failed to establish a *prima facie* case of unlawful discrimination based on his national origin, race, or military status.

¶ 30   During the IDHR's investigation, Cruz claimed that Apple asked him to leave its store after employees said he was "being disruptive" and customers claimed he was abusing his dog, and that Apple called the police when he refused to move from the front of the store. But as the Commission noted, Cruz failed to identify any Apple patrons outside the protected classes of which he was a member who were treated more favorably under similar circumstances. Because Cruz did not establish that he was "treated less favorably than similarly situated persons outside his protected class," the Commission properly determined that he failed to establish a *prima facie* case of unlawful discrimination. (Internal quotation marks omitted.) *Dunn*, 2022 IL App (1st)

211155-U, ¶ 34. We therefore find that the Commission's final order sustaining the IDHR's dismissal of Cruz's charge for lack of substantial evidence was not an abuse of discretion.

¶ 31    Cruz complains that the Commission failed to properly review the exhibits attached to his request for review and the "*prima facie* evidence and material facts" and likewise failed to follow the "administrative procedure" of the Act and administrative code. But his vague, speculative, and undeveloped allegations are not enough to overcome the Commission's finding that the IDHR's investigation did not reveal "substantial evidence" supporting his charge. See *Folbert*, 303 Ill. App. 3d at 25.

¶ 32    We note that Cruz submitted documents as an appendix in this court that are not included in the record on appeal, such as photographs of his laptop, emails from Apple regarding his appointment at the Apple store, and documents concerning his dog. We cannot consider facts and evidence not presented to the Commission. See 735 ILCS 5/3-110 (West 2022) ("No new or additional evidence in support of or in opposition to any finding, order, determination, or decision of the administrative agency shall be heard by the court.").

¶ 33    For these reasons, we could not possibly find that the Commission acted in an arbitrary or capricious manner in upholding the IDHR's dismissal for lack of substantial evidence.

¶ 34    The final decision of the Commission is affirmed.

¶ 35    Affirmed.